The **BOEING COMPANY,** Appellant,

v.

The **UNITED STATES,** Appellee.

Appeal No. 88–1298.

United States Court of Appeals, Federal Circuit.

Nov. 30, 1988.

Richard W. Oehler of Perkins Coie, Seattle, Wash., argued for appellant. With him on the brief was Harold F. Olsen.

Gregory A. Harrison, Dept. of Justice, Washington, D.C., argued for appellee. John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, M. Susan Burnett, Asst. Director and Paul F. McQuade, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., were on the brief for appellee. Also on the brief were Major Scott Bagley, Office of the Judge Advocate Gen., Dept. of the Air Force and Richard L. Hanson, Dept. of the Air Force, of counsel.

Before MARKEY, Chief Judge,
RICH and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

The Boeing Company (Boeing) appeals the decision of the Armed Services Board of Contract Appeals (Board), *Boeing Co.— Boeing Military Airplane Div.*, ASBCA No. 29793, 88–1 BCA ¶ 20,380 (1987) [available on WESTLAW, 1987 WL 46116], holding that all of Boeing's bid and proposal (B & P) costs incurred to enhance its ability to receive a Phase 2 contract must be recorded as direct costs of the Phase 1 contract, Contract No. F33657–77–C–0175, under the consistency requirements of General Accounting Office Cost Accounting Standard (CAS) 402, 4 C.F.R. §§ 402.10–.80 (1988). Because the Board erred in interpreting CAS 402, we reverse.

## BACKGROUND

In April 1976, the Air Force issued a request for proposals (RFP) specifically soliciting two proposals for the competitive design, production and demonstration of a B–52G and a KC–135 weapon systems trainer. The winner of a Phase 1 initial production contract competition would receive the Phase 2 contract for the balance of the equipment.

The RFP, at Line Item 0010 of the proposed contract, required each offeror to prepare a proposal for the Phase 2 contract and to specify a target cost for the proposal preparation. The RFP further provided that (1) the contents of the Phase 2 proposal would be specified at a later date, (2) the proposal instruction package (PIP) would be issued 23 months after award of the Phase 1 contract, and (3) the proposal would be due 2 months later. In October 1976, Boeing submitted its bid for the Phase 1 contract, including a target cost of $1,010,380 for the Phase 2 proposal effort.

Shortly thereafter, Boeing described its interpretation of CAS 402's Interpretation No. 1, 4 C.F.R. Part 402, Appendix (1988) (Interpretation No. 1), in an internal memorandum to its contracts directors and finance directors. Consistent with the foregoing memorandum, Boeing issued an internal directive specifying that all Phase 2 proposal preparation costs incurred during the two months between receipt of the PIP and submission of the proposal were to be allocated as direct costs of the Phase 1 contract, and all other costs for proposal activity generated to obtain the Phase 2 contract—those incurred prior to receipt of the PIP or after submission of the proposal—were to be allocated to Boeing's indirect B & P cost account.

In January 1977, Boeing submitted its best and final offer for the Phase 1 contract. The offer set forth a price of $486,-310 for Line Item 0010—the Phase 2 proposal activity—and stated that this price covered only the costs incurred in preparing the Phase 2 proposal. In April 1977, the Air Force awarded one of the Phase 1 contracts to Boeing and the other to Singer Company.

On April 20, 1979, the Air Force issued a PIP for only the B–52 trainer and cancelled the procurement of the KC–135 trainer. Although Boeing made a best and final offer for the Phase 2 production contract, the Air Force awarded the Phase 2 contract to Singer Company in May 1980.

From 1974 through 1979, Boeing had performed several independent research and development (IR & D) and B & P projects to enhance its capability to design and produce the weapon systems trainers and simulators for the B–52, KC–135 and other military aircraft. In accordance with defense contracting regulations, Boeing regularly reported its costs in these endeavors to the Department of Defense Tri–Service Office, the office responsible for negotiating ceilings on indirect cost allowances for IR & D/B & P projects undertaken by defense contractors. Boeing allocated all B & P costs incurred in performing the weapon systems trainer B & P efforts to its indirect IR & D/B & P cost accounts except for those costs incurred between receipt of the Phase 2 PIP and submission of the Phase 2 proposal. These latter costs, amounting to $444,235, were allocated directly to the Phase 1 contract.

The contracting officer in his final decision directed Boeing to adjust its accounts

to remove all B & P costs recorded as indirect costs for the years 1977 through 1980 and record these costs as direct costs of the Phase 1 contract. The issue of direct or indirect cost allocation for all years except 1979 was resolved during negotiation of final overhead rates.

Before the Board, the parties agreed that Boeing had properly allocated directly to the Phase 1 contract the costs incurred in actually preparing the Phase 2 proposal, *i.e.*, the costs incurred between Phase 2 PIP receipt and Phase 2 proposal submission. Thus, the only remaining dispute was whether CAS 402 allowed Boeing to treat all other 1979 B & P costs related to the weapon systems trainers as indirect costs. The Board resolved the dispute adversely to Boeing.

## ISSUE

Whether the Board erred in interpreting CAS 402 to require Boeing to allocate all B & P costs incurred to enhance its ability to receive the Phase 2 contract as direct costs of the Phase 1 contract.

## OPINION

CAS 402, promulgated by the Cost Accounting Standards Board (CASB) pursuant to the Defense Production Act Amendments of 1970, Pub.L. 91–379, 84 Stat. 796 (1970), enjoys the "full force and effect of law." 50 U.S.C.App. § 2168(i)(A) (1982). CAS 402 requires in pertinent part that

[a]ll costs incurred for the same purpose, in like circumstances, are either direct costs only or indirect costs only with respect to final cost objectives.

4 C.F.R. § 402.40.

The CASB published an interpretation of Interpretation No. 1 because a number of questions had been raised as to ʼhow the standard was to be applied to account for B & P costs and, particularly, as to whether all costs incurred in preparing proposals are incurred for the same purpose, in like circumstances and therefore must all be allocated alike. Preamble C, 4 C.F.R. Part 402 (1988). Interpretation No. 1 "deals with the way Part 402 applies to the treat-

ment of costs incurred in preparing, submitting, and supporting proposals." Interpretation No. 1.

Under Part 402, costs incurred in preparing, submitting, and supporting proposals pursuant to a specific requirement of an existing contract are considered to have been incurred in different circumstances from the circumstances under which costs are incurred in preparing proposals which do not result from such specific requirement. The circumstances are different because the costs of preparing proposals specifically required by the provisions of an existing contract relate only to that contract while other proposals costs relate to all work of the contractor.

This interpretation does not preclude the allocation, as indirect costs, of costs incurred in preparing all proposals. The cost accounting practices used by the contractor, however, must be followed consistently and the method used to reallocate such costs, of course, must provide an equitable distribution to all final cost objectives.

*Id.*

The Board held that the consistency requirement of CAS 402 supported the contracting officer's decision. *Boeing*, 88–1 BCA at 103,052–53. Because all of the 1979 B & P costs were "caused or generated" by or "relate[d]" to the Phase 1 contract and were not "caused or generated" by all work of the contractor, the Board concluded that the costs had to be allocated directly to the Phase 1 contract. *Id.* The Board explained that all 1979 B & P costs were generated in anticipation of the preparation and submission of the Phase 2 proposal as required by the Phase 1 contract and would not have occurred without the Phase 1 contract. *Id.* Because they were costs of competition caused or generated by the Phase 1 contract, the Board held that CAS 402 requires allocating these costs in the same manner as costs of proposals specifically required by the Phase 1 contract. *Id.*

The Board erred as a matter of law in interpreting CAS 402 to require like ac-

counting for B & P costs "relate[d] to" or "caused or generated" by a contract and B & P costs "specifically required" by a contract. In interpreting CAS 402, the CASB used the words "specific requirement of an existing contract" to distinguish between proposals in different circumstances. Interpretation No. 1. During the comment period on Interpretation No. 1, the CASB was requested to change the "specifically required" language to "related to," "arising from" or the like. Preamble C, 4 C.F. R. Part 402. The CASB refused, maintaining that the "specific requirement" provision is the distinguishing characteristic for determining if circumstances can be considered different with respect to allocating costs directly or indirectly. *Id.*

The Board failed to take into consideration the overall thrust of Interpretation No. 1—that B & P costs are normally allocable to an indirect account. Prior case law also supports allocating all B & P costs indirectly. *See, e.g., Singer–General Precision, Inc. v. United States,* 192 Ct.Cl. 435, 427 F.2d 1187, 1190–91 (1970) (recognizing the reasonableness of allocating B & P costs to a general overhead account); *North Am. Rockwell Corp.,* ASBCA No. 13067, 69–2 BCA ¶ 7812, at 36,305 (1969) [1969 WL 544] (stating that "bid and proposal costs are chargeable to current overhead accounts"). Because B & P costs benefit all business of a contractor rather than a specific existing contract, treating all such costs as indirect overhead is logical.

CAS 402, however, does permit a contractor to charge some B & P costs directly if all the B & P costs incurred in like circumstances are allocated alike. 4 C.F.R. § 402.40. In other words, splitting of B & P costs is allowed only if the costs are incurred in different circumstances or for different purposes. *Id.* Costs of proposals specifically required by an existing contract are incurred in circumstances different from proposal costs relative to all work of the contractor. Interpretation No. 1. Therefore, B & P costs arising from a specific requirement in an existing contract may be reallocated from the indirect cost account to the direct cost account. The CASB, however, has mandated that any such reallocation must follow consistently the contractor's established accounting practices. *Id.*

Under its established accounting practices, Boeing, with two exceptions, allocates all B & P costs indirectly. If the proposal is a follow-on to an existing single source, *i.e.,* noncompetitive, contract or is a proposal specifically required by an existing contract, Boeing allocates the costs directly to the existing contract. Boeing is not splitting like costs between indirect and direct accounts because the single source follow-on and specifically-required costs arise in circumstances different from other B & P costs that Boeing allocates indirectly. Boeing's accounting practices, if followed consistently, comply with CAS 402.

As a result of the government's Phase 1 contract acceptance, only the Phase 2 proposal costs delineated in Boeing's best and final offer—those incurred between Phase 2 PIP receipt and Phase 2 proposal submission—were specifically required by an existing contract. Boeing allocated those B & P costs directly to the contract because they were incurred in different circumstances from Boeing's overall B & P efforts. Although other Phase 2 B & P costs may have been generated by the Phase 1 contract, no contractual obligation existed which would differentiate these costs from other B & P costs. Thus, these costs were properly allocated as indirect B & P costs.

Because Boeing followed consistently its established accounting practices and those practices comply with CAS 402, the Board's decision is

REVERSED.