UNITED STATES of America ex rel.
Jerry J. MAYMAN, Plaintiff,

v.

MARTIN MARIETTA CORPORATION,
Defendant.

Civ. A. No. MJG–91–1853.

United States District Court,
D. Maryland.

April 27, 1995.

first exhaust administrative remedies would be pointless and wasteful since that relief would not be available from the Commissioner.

Roann Nichols, and U.S. Atty., Baltimore, MD, Dodge Wells, and Dept. of Justice, Washington, DC, for plaintiff the U.S.

Robert L. Vogel, Esquire, Washington, DC, for plaintiff Jerry J. Mayman.

Michael Schatzow, Elizabeth M. Borinsky, Venable, Baetjer and Howard, Baltimore, MD, Thomas J. Madden, James F. Worrall, Venable, Baetjer and Howard, Washington, DC, and Francis B. Burch, Jr., and Robert J. Mathias, Piper & Marbury, Baltimore, MD, for defendant.

## MEMORANDUM AND ORDER

GARBIS, District Judge.

The Court has before it Defendant Martin Marietta's Motion to Dismiss. The Court has considered the parties' various submissions and has held a hearing on the Motion and has had the benefit of the arguments of counsel.

### I. *LEGAL STANDARD*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court, when deciding a motion to dismiss, must consider well-pled allegations in a complaint as true and must construe those allegations in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). The Court must further disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir.1969).

Thus, the Court accepts as true the Government's [1] well-pled allegations and disregards Martin Marietta's contrary allegations.

---

1. For convenience the Plaintiffs herein are collectively referred to as "the Government."

## II. BACKGROUND

The Relator Jerry J. Mayman ("Relator") originally filed this claim on July 2, 1991. Mayman filed under the *qui tam* provisions of the False Claims Act, 31 U.S.C.A. §§ 3729 *et seq.* (West 1983 & Supp.1994), which allow individuals with "direct and independent" knowledge of false claims to file complaints on their own behalf and on behalf of the federal government. The statute provides for considerable financial rewards for *qui tam* plaintiffs if a false claim is subsequently found. *Id.* § 3730(d). The Government has the option to intervene in the case and ultimately manage the prosecution of the case. *Id.* § 3730(c).

The Government decided to intervene in this case and filed the Amended Complaint on May 19, 1994. At its core, the Amended Complaint charges Martin Marietta with fraudulently billing the Government for general defense research when Martin Marietta had already agreed to do the same research under a separate contract.

In 1984, the United States Navy contracted with Martin Marietta to design and build a full-scale model of a fake missile, called a Supersonic Low Altitude Target (SLAT). The Navy intended to use the missile to test its missile defense systems on its ships. Martin Marietta agreed to design and build the SLAT prototype for $103.6 million. The Amended Complaint claims that Martin Marietta knew that the project would in fact cost $145.9 million, considerably more than its bid. The Complaint alleges that Martin Marietta intentionally underbid the project and then, to recover the anticipated shortfall, planned to bill $30.3 million of SLAT work to the Government as part of the company's general research efforts.

This general research, called Independent Research and Development ("IR & D"), is funded by the Government to support cutting edge research which is "not sponsored by, or required in performance of" any specific, existing contract. 48 C.F.R. § 31.205–18 (also referred to as Federal Acquisition Regulation (FAR) § 31.205–18). However, the IR & D work may ultimately support a contractor's work on other contracts awarded in the future. Each year, the Government negotiates so-called "advance agreements" with contractors to do IR & D up to certain monetary limits. The contractors recover for IR & D work, up to the specified annual limits, by surcharging the Government on other contracts. Thus, while IR & D work is negotiated in one annual agreement, the Government pays for it as part of numerous other contracts.

The Government argues that Martin Marietta billed six tasks to IR & D that were already part of, and required under, the SLAT contract. The Government alleges that Martin Marietta established the six IR & D projects prior to the awarding of the SLAT contract for the specific purpose of doing SLAT work under IR & D auspices. The Government claims that Martin Marietta would not have pursued the six IR & D tasks unless it had received the SLAT contract.

The Government's Amended Complaint includes eight counts. Counts I and II claim violations of the False Claims Act. Count III claims breach of the SLAT contract. Count IV claims breach of the IR & D annual agreements for 1984, 1985, 1986 and 1987. Counts V through VII make the common law claims of unjust enrichment, payment under mistake of fact and negligent misrepresentation, respectively. Finally, Count VIII claims violation of the Department of Defense Authorization Act of 1986.

## III. DISCUSSION

### A. False Claim Counts: Counts I and II

#### 1. Regulatory Confusion

Martin Marietta claims that the federal regulations covering billing for government-sponsored research are so confusing that the company cannot properly be held liable under the False Claims Act. In particular, Martin Marietta says that contractors often do not know whether to bill research to the contract itself or as part of its IR & D efforts. Martin Marietta claims that it made a good faith determination that it could bill some research called for in the SLAT contract to IR & D. It claims that the IR & D work, while in support of the SLAT contract,

had potential applicability to other future contracts.

It may be that there are some grey areas in the relevant regulations which result in confusion and honest mistakes on the part of some government contractors. For example, there is considerable debate over whether a particular task is "required" by a contract and therefore cannot be billed to IR & D. *See* John W. Chierichella, "IR & D vs. Contract Effort," *CP & A Report 3,* at 8–12 (Feb.1990). One view is that a contractor can bill to IR & D any work not explicitly called for in the contract. An alternate view is that a contract includes everything implicitly necessary to carry it out. In any case, the story depicted by the Government, and accepted as true for the purposes of this Motion, does not fall into any grey area.

■ It is undisputed that six tasks in issue charged to IR & D were required by the SLAT contract. However, Martin Marietta claims that the tasks were relevant to other contracts and therefore could not be charged to the SLAT contract. The company relies on another federal accounting regulation which distinguishes "direct" from "indirect" costs. 48 C.F.R. § 9904.418–30. Martin Marietta suggests that a task which is in support of more than one contract must be charged to indirect costs and not to any one contract. Martin Marietta's position does not appear to be correct. When applied to a task simultaneously required by more than one *existing* contract, Martin Marietta's argument might be sound. In that case, the company might split the costs proportionally between the various contracts or bill the costs as indirect. However, Martin Marietta had no contract other than SLAT calling for the six tasks at issue.

When applied to a task required by one contract but with *potential* benefit to other *future* contracts, Martin Marietta's position does not appear reasonable. When the Government hires a contractor to do research and development work, that work inevitably benefits other contemplated contracts. Certainly, scientific research is rarely so narrow that it fails to benefit other projects. Indeed, the research in a research and development inevitably benefits one very particular

contract—the contract to build what it is that is being researched and developed.

Martin Marietta's position would create absurd situations. The Government could contract to pay a set amount for research and development of a prototype. But, according to Martin Marietta, the contractor could not bill *any* of its work to that contract because the research and development would also benefit the possible contract to produce the prototype. Therefore, the contractor would have to bill the work as indirect costs. Moreover, the company could spend two, three or even ten times the contracted amount and bill it all to IR & D as indirect costs benefitting both the research and development contract and the future production contract.

In other words, the budget for the research and development contract itself would go completely unexpended, but the Government would pay many times the contract value through IR & D. Martin Marietta's argument would make the very notion of a research and development fixed-price contract impossible. That cannot be. The Government is entitled to hire contractors to perform research and development services and to limit the amount paid to an agreed upon sum. The Government's research needs cannot give rise to blank checks held by the contractors.

For the foregoing reasons, the two decisions relied upon by Martin Marietta are unpersuasive and somewhat irrelevant. The Board in *North American Rockwell Corporation* interpreted the pertinent regulation prior to the addition of a critical restriction—that IR & D not include work that is "required" by a specific contract. *North American Rockwell Corp.,* No. 13607, 1969 WL 544, 169 ASBCA LEXIS 129, 69–2 BCA (CCH) ¶ 7812 (July 22, 1969). Martin Marietta would have this Court return to the pre-1972 era and permit a contractor to bill to IR & D tasks required under a contract.

In *Boeing v. United States,* 862 F.2d 290 (Fed.Cir.1988), decided after the introduction of the "required" language, the company received a contract, part of which required it to prepare a proposal for a second-phase con-

tract. Upon receipt of the government's phase two specifications, the company billed its proposal preparation work to the contract. *Id.* at 291. However, Boeing billed preparatory work done prior to receipt of the specifications to Bid & Proposal work (B & P). *Id.* B & P is also governed by FAR § 31.205–18, which defines B & P as work done in preparation for a bid but not "sponsored by a grant or cooperative agreement or required in contract performance." 48 C.F.R. § 31.205–18(a). The Federal Circuit allowed this split because it found that Boeing's work prior to receipt of the proposal specifications was not "specifically required" by the first contract. *Id.* at 292–93 (quoting an interpretation of B & P prepared by the Cost Accounting Standards Board).

▪ In the case at Bar, there is no dispute that the SLAT contract required the six tasks. The Government claims that Martin Marietta, knowingly and intentionally, billed work required under the SLAT contract to IR & D for the purpose of winning the SLAT contract but recovering more than the contracted price. It is clear that the regulations are designed precisely to prevent this kind of intentional underbidding and cost shifting of contract-specific work to IR & D.

### 2. Estoppel

▪ Martin Marietta next asserts that it informed the Government of its intent to perform the SLAT work using IR & D funds. Martin Marietta argues that the Government is therefore estopped from now claiming fraud under the False Claims Act. Even assuming that Martin Marietta did inform the Government of its precise actions, a government officer cannot authorize a contractor to violate federal regulations.

In theory, Martin Marietta's discussions with the Government's contracting officer might have altered the contract itself to exclude the six tasks at issue. The SLAT contract would no longer have explicitly "required" the tasks, and the contractor could arguably then bill those tasks to IR & D

**2.** For post-October 1986 actions, the Government can show, in addition to actual knowledge, deliberate ignorance or reckless disregard of the falsity. 31 U.S.C.A. § 3729(b) (West Supp.1994).

(assuming the Court did not find that "required" included implicitly necessary tasks). However, Martin Marietta has not made this argument, and it is not clear whether the written contract would support it.

▪ Martin Marietta's notice to the Government might also negate any contention that the company intended to deceive the Government. However, deception is not an element of a False Claims Act violation. To prove a violation of the False Claims Act, the Government need only to show that Martin Marietta knowingly presented false or fraudulent claims to the Government. 31 U.S.C.A. § 3729(b) (West 1994) ("no specific intent to defraud is required").[2] Thus, a contractor who tells a government contracting officer that a claim is false still violates the statute when the false claim is submitted. *See United States ex rel. Hagood v. Sonoma County Water Agency,* 929 F.2d 1416, 1421 (9th Cir. 1991) ("That the relevant government officials know of the falsity is not in itself a defense.")

In any case, the extent and nature of Martin Marietta's notice raises disputed factual issues which cannot be resolved in the present context (Gov't.Opp. at 22).

### 3. Particularity of the Pleadings

▪ Martin Marietta claims that the Amended Complaint fails to plead its fraud counts with the specificity required under the Federal Rule of Civil Procedure 9(b). However, the Court finds that the 18–page Complaint adequately provides notice to Martin Marietta of the claims against it. The Amended Complaint provides the six specific SLAT tasks which Martin Marietta improperly charged to IR & D. It describes the scheme by which Martin Marietta intentionally underbid the SLAT contract and recovered its deficit costs through cost shifting to IR & D. Of course, Martin Marietta is entitled to a particularization of the fraud claims. It should seek specifics through the discovery process.

This addition does not appear relevant to this case since the Government alleges actual knowledge.

### 4. Accord And Satisfaction

 Martin Marietta next contends that Counts I and II are improper because the Government settled any disputes over the SLAT contract when it agreed to an accord and satisfaction at the end of the SLAT contract. An accord and satisfaction is enforceable only to the extent that the parties have authority to settle disputes. *See Edwards v. United States,* 22 Cl.Ct. 411, 421 (1991). Under statute, the Government's contracting officer for this contract had no authority to settle fraud claims. 41 U.S.C.A. § 605(a) (West 1988). Thus, fraud claims are not affected by the agreement, and the Government can raise them now.

Moreover, the basic claim does not arise out of the SLAT contract but out of the IR & D agreements negotiated each year between the Government and Martin Marietta. Indeed, there may be no breach of the SLAT contract at all. If Martin Marietta had underbid the project and then performed it at the agreed-upon price, no breach of the SLAT contract would exist. The allegedly fraudulent acts occurred only when Martin Marietta sought reimbursement for SLAT work as part of IR & D. Thus, Martin Marietta breached the IR & D agreements. Martin Marietta does not assert that any accord and satisfaction occurred with respect to the IR & D agreements.

### B. *Jurisdiction*

### 1. Counts I and II

 Martin Marietta claims that this Court does not have jurisdiction over the Government's breach of contract and common law claims, under the Contract Disputes Act (CDA), 41 U.S.C.A. §§ 601 *et seq.* (West 1986 & Supp.1991). The CDA divests the federal district courts of jurisdiction over government contracts disputes with one important exception—the district courts retain jurisdiction for claims "involving fraud." *Id.* § 605(a); *see United States v. Rockwell Intern. Corp.,* 795 F.Supp. 1131, 1134 (N.D.Ga. 1992); *United States v. J.T. Const. Co., Inc.,* 668 F.Supp. 592, 594 (W.D.Tex.1987).

 The two False Claims Act counts (I and II) clearly "involv[e] fraud." The Government contends that Martin Marietta intentionally misrepresented SLAT work as IR & D work. Thus, this Court unquestionably has jurisdiction to hear these counts. The breach of contract and common law counts are also based on Martin Marietta's allegedly fraudulent actions and therefore "involv[e] fraud." The Court accepts the logic of Judge Hall of the Northern District of Georgia who stated:

> This Court finds that the more desirable interpretation of § 605(a), read in conjunction with 28 U.S.C. § 1367(a) [bestowing supplemental jurisdiction on the district courts], is that where the specific events, transactions, and contracts at issue in the lawsuit give rise to fraud allegations, the CDA no longer applies.

*Rockwell Intern. Corp.,* 795 F.Supp. at 1135; *see, also* S.Rep. No. 1118, 95th Cong., 2d Sess., 20 (1978) (stating that the Contract Disputes Act removed from the jurisdiction of the federal courts only "parts of the claim *not associated* with possible fraud or misrepresentation of fact") (emphasis added), *reprinted in* 1978 U.S.C.C.A.N. 5235, 5254 (*quoted in Martin J. Simko Const., Inc. v. United States,* 852 F.2d 540, 544 (Fed.Cir. 1988)).

Moreover, the breach of contract issues necessarily will be pertinent for the False Claim Act counts. Martin Marietta's claims for IR & D reimbursement were false, and therefore in violation of the False Claims Act, only if they violated the terms of the IR & D agreements and regulations incorporated therein. Martin Marietta requests not a bifurcation of the two False Claim Act and breach of contract counts, but a double examination of the same issue. The Court sees no reason to have it and the United States Court of Federal Claims (or Armed Services Board of Contract Appeals) consider the same matter.

### 2. Count III

 The Court questions the viability of Count III. The Government admitted that the SLAT contract breach relates only to the alleged violations of the IR & D regulations which are incorporated by reference into the

SLAT contract. (Gov't's Opp. at 24 ("This case does not arise out of the SLAT contract."); *id.* at 24 n. 12 ("Although Count III does allege breach of the SLAT contract, the breach charged is the violation of the IR & D regulations, which are included by reference in the contract."). This alleged violation is no different from the allegations in Count IV. Moreover, if this Count serves a purpose, then the Government would presumably have to assert a claim as to every contract under which the Government employed Martin Marietta for the IR & D work at issue. The Court sees no purpose to Count III and dismisses it.

### C. *Common Law Claims: Counts V through VII*

#### 1. Counts V and VI

■■■ Martin Marietta next claims that the three common claims of unjust enrichment, payment under mistake of fact and negligent misrepresentation are quasi-contractual or torts-based and, therefore, improper in the context of an express contract. The papers filed by Martin Marietta do not call into question the existence of an express contract between the company and the Government in the form of annual "advance agreements." As such, the Court would normally exclude the Government's quasi-contractual claims. However, at the hearing, Martin Marietta questioned whether the "advance agreements" are in fact contracts. So long as there is an issue as to the existence of a contract, the Government can plead a quasi-contractual theory in the alternate.

#### 2. Count VII

■■■ A negligent misrepresentation claim requires a duty to accurately inform which exists independent of the contract.

See, *e.g.*, *Flow Industries Inc. v. Fields Const. Co.*, 683 F.Supp. 527, 530 (D.Md.1988) (applying Maryland law). There is no free-standing duty to provide accurate information to the Government. To the extent a duty exists in this case, it comes from the federal regulations incorporated into the IR & D agreements. Therefore, this claim does not properly lie.[3]

### D. *Count VIII*

■■■ Martin Marietta claims that the Department of Defense Authorization Act of 1986 (DoDAA), upon which Count VIII is based, does not contain a cause of action upon which the Government can base a claim. However, as the Government points out, DoDAA does allow a party to receive treble damages for defense contract violations during a time period—between November 8, 1985, and October 26, 1985—in which the more general False Claims Act allowed only double damages. *See* 31 U.S.C.A. § 3729 (West Supp.1994) (historical and statutory notes). Therefore, DoDAA is properly included in the Amended Complaint. Technically, it increases the damages available under Counts I and II and is not a separate cause of action. However, no purpose would be served to require an amendment to state the obvious as to the nature of the Count.

### E. *The Role of the Relator*

■■■ Martin Marietta argues that the Relator can participate only in regard to the False Claims Act counts and has no standing as to the other counts. Technically, Martin Marietta is correct. A relator has standing under the False Claims Act either because of his financial stake in the outcome or because Congress statutorily assigned him part of the Government's cause of action. *See* Comment, Thomas R. Lee, *The Standing of Qui*

---

**3.** At the hearing, the Government alleged that Martin Marietta negligently induced the Government into the IR & D annual "advanced agreements." That is, Martin Marietta, by negligently making false representations that the six SLAT tasks were general research, improperly convinced the Government to set annual IR & D limits higher than if it had known the truth. This claims relies on the duty between one contracting party and another to make accurate representations in the inducement of the contract. If

this is the claim the Government asserts, the Government should seek to rephrase Count VII in a Motion to Amend Complaint. At that time, the Government should explain whether the relevant law (i.e., federal common law or the law of a particular state) recognizes an action for negligent misrepresentation in the context of a contract with the federal government. The Court fails to see how this count adds much to the Government's claim.

*Tam Relators Under the False Claims Act,* 57 U.Chi.L.Rev. 543, 555–570 (1990). Neither situation applies in the context of breach of contract and common law claims where Congress has not granted the Relator any comparable rights. The Relator cites 31 U.S.C.A. § 3730(c)(5) (West Supp.1994), which reads:

> Notwithstanding subsection [3730(b)], the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action continued under this section.

By its terms, this passage permits continued recovery by a Relator if the Government chooses to pursue the false claim in another forum. However, it does not cover additional counts raised by the Government as part of an action in the same forum in which the False Claims Act counts are brought.

The Relator can participate only in regard to Counts I and II. However, the restriction may not have any procedural effect due to the relationship between Counts I and II and the subject matter of the other Counts.

## IV. *CONCLUSION*

For the foregoing reasons:

1. Martin Marietta's Motion To Dismiss is:

 a) DENIED as to Counts I, II, IV, V, VI and VIII.

 b) GRANTED as to Counts III and VII.

2. The Relator's participation is limited to Counts I and II. However, he may participate in proceedings relating to other Counts so long as there is also some relationship to Counts I and II.

SO ORDERED.