**Norman I. GOLD, Plaintiff–Appellant,**

**v.**

**MORRISON–KNUDSEN CO., Black River Constructors, Fort Drum Constructors, and National Structures, Inc., Defendants–Appellees.**

**No. 343, Docket 94–9307.**

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1995.

Decided Oct. 23, 1995.

Norman I. Gold, pro se.

Joel L. Lindy, Harris, Beach & Wilcox, Albany, NY (Lewis J. Baker, Watt, Tieder & Hoffar, McLean, VA, of counsel), for defendants-appellees.

Before: ALTIMARI, McLAUGHLIN, and PARKER, Circuit Judges.

PER CURIAM:

Norman I. Gold, *pro se*, appeals from an order, dated March 3, 1994, dismissing with prejudice one count of his *qui tam* suit, brought under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and from a judgment, dated November 18, 1994, dismissing his remaining counts for lack of jurisdiction. We affirm.

## I.

In 1985, the United States Army Corps of Engineers solicited bids for a family housing construction project at Fort Drum, in upstate New York. Gold, a contractor, submitted a $41 million bid. National Structures, Inc. ("NSI"), a wholly-owned subsidiary of Morrison–Knudsen Company, Inc. ("Morrison"), submitted a $50.1 million bid. There were no other bids. The Army Corps disqualified Gold's bid purportedly because he failed to comply with certain requirements, and NSI received the contract. Thereafter, various Morrison-affiliated construction firms submitted winning bids totalling $570 million for two other Fort Drum projects. Gold did not submit bids for these two projects.

When all was said and done, the Morrison entities collected more than $100 million in extra payments for cost overruns under the three construction contracts. The cost overruns were all part of the public record, having been addressed in extensive arbitration proceedings between Morrison and the government, in draft administrative reports prepared by an Army Corps contracting engineer, who was monitoring progress under the contracts, and in articles in the *Syracuse Herald Journal* and the *Engineering News Record.*

Suspecting chicanery, Gold wrote letters to then-Defense Secretary Richard Cheney "alerting" him to possible fraud problems at Fort Drum and asking him for help in obtaining information about the cost overruns on the contracts. Cheney referred the matter to Fort Drum, which conducted an investigation. Some time later, Gold received an anonymous letter naming various Army Corps officials who might have the information Gold sought and ominously warning that "[t]he debacle at Ft. Drum goes much further than any one person knows."

Gold then brought a *qui tam* action under the FCA in the United States District Court for the Northern District of New York (Con. G. Cholakis, *Judge* ) against Morrison and its related entities. Gold pleaded three "counts", one for each Fort Drum contract, alleging that the defendants had defrauded the government. The government investigated his allegations, and declined to join the suit.

The defendants then moved to dismiss the complaint for failure to plead fraud with particularity under Fed.R.Civ.P. 9(b). Judge Cholakis denied the motion, but ordered Gold to file an amended complaint. After Gold did so, the defendants again moved to dismiss on the same grounds. This time, Judge Cholakis dismissed Count One of the amended complaint, but ruled that Counts Two and Three satisfied Rule 9(b). Finally, after several months of discovery, the defendants moved for summary judgment on the two remaining counts, contending the court lacked subject matter jurisdiction under the FCA. Judge Cholakis granted the motion, and entered judgment for the defendants.

## II.

On appeal, Gold argues that Rule 9(b) does not apply to FCA claims. We disagree, as do most courts that have confronted this issue. *See, e.g., Cooper v. Blue Cross & Blue Shield, Inc.,* 19 F.3d 562, 568 (11th Cir.1994) (per curiam); *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield, Inc.,* 755 F.Supp. 1055, 1058 (S.D.Ga.1990).

It is self-evident that the FCA is an antifraud statute. *See* 31 U.S.C. § 3729(a) ("false or fraudulent"; "conspires to defraud"; "intending to defraud"); *United States v. Neifert–White Co.,* 390 U.S. 228, 233, 88 S.Ct. 959, 962, 19 L.Ed.2d 1061 (1968) (the FCA "protect[s] the funds and property of the Government from fraudulent claims") (internal quotation marks omitted). Rule 9(b), in turn, requires that "[i]n *all averments of fraud* ..., the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b) (emphasis added).

Thus, claims brought under the FCA fall within the express scope of Rule 9(b).

Not surprisingly, then, courts routinely require FCA claims to comply with Rule 9(b). *See United States ex rel. Mayman v. Martin Marietta Corp.,* 894 F.Supp. 218, 223 (D.Md. 1995); *Wilkins ex. rel. United States v. Ohio,* 885 F.Supp. 1055, 1060–61 (S.D.Ohio 1995); *United States v. Bouchey,* 860 F.Supp. 890, 893 (D.D.C.1994); *United States ex rel. Mikes v. Straus,* 853 F.Supp. 115, 118 (S.D.N.Y.1994); *United States ex rel. Kent v. Aiello,* 836 F.Supp. 720, 722 (E.D.Cal.1993); *United States v. Crescent City,* 151 F.R.D. 288, 290 (E.D.La.1993); *United States v. Napco Int'l, Inc.,* 835 F.Supp. 493, 495 (D.Minn.1993); *United States ex rel. Robinson v. Northrop Corp.,* 824 F.Supp. 830, 832–33 (N.D.Ill.1993); *United States v. Kensington Hosp.,* 760 F.Supp. 1120, 1125–26 (E.D.Pa.1991); *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield, Inc.,* 755 F.Supp. 1040, 1051–53 (S.D.Ga.1990); *United States ex rel. McCoy v. California Med. Review, Inc.,* 723 F.Supp. 1363, 1372 (N.D.Cal.1989); *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Acc. Ins. Co.,* 721 F.Supp. 1247, 1258 (S.D.Fla.1989); *Boisjoly v. Morton Thiokol, Inc.,* 706 F.Supp. 795, 809 (D.Utah 1988); *United States v. Bonanno Org. Crime Family of La Cosa Nostra,* 695 F.Supp. 1426, 1434 (E.D.N.Y. 1988); *see also Toner v. Allstate Ins. Co.,* 821 F.Supp. 276, 283 (D.Del.1993).

True, the FCA has a liberal scienter requirement: "no proof of specific intent to defraud is required" to state a claim under it. 31 U.S.C. § 3729(b). But, this does not conflict with Rule 9(b), since "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R.Civ.P. 9(b). Here, Judge Cholakis did not require Gold to particularize the defendants' specific intent to defraud. Rather, he required Gold to state with particularity the specific statements or conduct giving rise to the fraud claim. Gold failed to do so.

Finally, Gold's argument that Rule 9(b) applies only to common law fraud claims is meritless. In addition to fraud claims brought under the FCA, Rule 9(b) has commonly been applied to other statutory fraud claims, *e.g.,* RICO and securities fraud cases. *See, e.g., Powers v. British Vita, P.L.C.,* 57 F.3d 176, 184 (2d Cir.1995) (civil RICO claim alleging wire fraud, mail fraud, and securities fraud as predicate acts); *Breard v. Sachnoff & Weaver, Ltd.,* 941 F.2d 142, 143–44 (2d Cir.1991) (securities fraud). No reason is apparent why the same pleading stricture should not apply to FCA claims. Judge Cholakis therefore did not err by extending Rule 9(b) to claims under the FCA, and by dismissing Count One for failure to comply therewith.

### III.

■ Gold's remaining arguments concerning the district court's subject matter jurisdiction over Counts Two and Three lack merit. The FCA bars *qui tam* suits based upon publicly disclosed information, unless plaintiff was an original source of that information. *See* 31 U.S.C. § 3730(e)(4)(A). To be an original source, plaintiff must, at least, have direct and independent knowledge of that information. *See* 31 U.S.C. § 3730(e)(4)(B); *United States ex rel. Dick v. LILCO,* 912 F.2d 13, 16 (2d Cir.1990) (adding requirement that plaintiff be a direct or indirect source to entity that publicly disclosed the information).

Gold gleaned the information underlying Counts Two and Three from the media, from administrative reports prepared for the Army Corps, and from arbitration hearings concerning the cost overruns. Because Gold had no direct and independent knowledge of any of this publicly disclosed information, he was not an original source of that information, and his suit is barred. *See United States ex rel. Kreindler & Kreindler v. United Techs. Corp.,* 985 F.2d 1148, 1159 (2d Cir.) (FCA bars any claim where a third party is the core source of information underlying that claim), *cert. denied,* —— U.S. ——, 113 S.Ct. 2962, 125 L.Ed.2d 663 (1993); *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.,* 944 F.2d 1149, 1155–56 (3d Cir.1991) (FCA precludes "*qui tam* suits based on information that would have been equally available to

strangers to the fraud transaction had they chosen to look for it as it was to the relator").

Accordingly, the order and judgment of the district court are AFFIRMED.