918 F.Supp. 1338 (1996)
UNITED STATES of America, ex rel., Daniel G. O'KEEFE, Plaintiff,
v.
McDONNELL DOUGLAS CORPORATION, Defendant.
No. 4:93CV02188 GFG.
United States District Court, E.D. Missouri, Eastern Division.
March 20, 1996.
*1339 *1340 Daniel J. McMichael, McMichael and Logan, Chesterfield, MO, Francis E. Pennington, III, Daniel V. Conlisk, Dankenbring and Greiman, St. Louis, MO, for Daniel G. O'Keefe.
Stephen H. Rovak, Stephen H. Rovak, Roger K. Heidenreich, Robert F. Scoular, Sonnenschein and Nath, St. Louis, MO, David J. Massa, Charles A. Weiss, Veryl L. Riddle, Bryan Cave, St. Louis, MO, Robert F. Schoular, Sonnenschein and Nath, Los Angeles, CA, for McDonnell Douglas Corp.
Claire M. Schenk, Office of U.S. Attorney, St. Louis, MO, Michael F. Hertz, Stanley E. Alderson, Anthony M. Alexis, U.S. Department of Justice, Civil Division, Washington, DC, for U.S.

ORDER
GUNN, District Judge.
This matter is before the Court on various motions.
Daniel G. O'Keefe filed this action against McDonnell Douglas Corporation ("MDC") pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33. The FCA generally prohibits certain acts designed to defraud the federal government. 31 U.S.C. § 372(a). A private person may bring a civil action, called a qui tam action, for a violation of the Act for herself and for the United States Government. 31 U.S.C. § 3730(b). The person is called the relator, and the Act provides that her complaint not be served on the defendant and be filed and kept under seal for sixty days while the government decides whether to intervene and take over the prosecution of the action. 31 U.S.C. § 3730(b)(2). For good cause shown, the government may move to extend that sixty-day period. 31 U.S.C. § 3730(b)(3). After the government decides whether to intervene, the complaint is unsealed and served upon the defendant. Id.
In this case, the original Complaint contains allegations that MDC submitted false *1341 claims to the United States by claiming labor costs improperly charged to various Department of Defense contracts. The Complaint was filed under seal on October 12, 1993. After numerous extensions of time for good cause shown, the government filed its notice of intervention on August 21, 1995. The government filed a Third Amended Complaint on October 18, 1995. The government now moves for leave to file its Fourth Amended Complaint. The Court has reviewed the government's motion and will grant leave.
The Fourth Amended Complaint describes and alleges the facts as follows. On January 13, 1988 the United States Navy awarded MDC and General Dynamics Corporation ("GDC") Contract No. N00019-88-C-0050 (the "A-12 Contract") for the full scale engineering development, with limited production options, of the Advanced Tactical Aircraft, later designated the A-12. The A-12 Contract was a fixed-price incentive contract with a target price of $4,379,219,435. On May 31, 1990 the Navy exercised its option to purchase six Lot 1 initial production aircraft at the not-to-exceed price in the A-12 Contract. On January 7, 1991 the Navy terminated the A-12 Contract for default based on the contractors' failure to make progress toward completing the design, development, fabrication, assembly, and testing of the aircraft within the contract schedule and in accordance with the contract specifications. Subsequent to termination, MDC and GDC submitted a termination claim to the Navy that included all labor hours allegedly incurred on the A-12 Contract.
Prior to being awarded the A-12 Contract, MDC submitted pricing proposals to the Navy which included projected engineering labor costs. The government contends that MDC intentionally inflated the estimated labor costs by approximately $11 million. MDC also intentionally inflated its projected labor costs in connection with two other government contracts: the HARPOON Missile Contract, N00019-87-C-0103, and the Standoff Land Attack Missile ("SLAM") Contract, N00019-87-C-0020. By submitting the inflated estimates, MDC violated provisions of the Truth in Negotiations Act, 10 U.S.C. § 2306a, and certain federal acquisition regulations.
The government further alleges that since 1987 or before, MDC has mischarged labor hours in connection with government contracts for the A-12, the Air Force's C-17 Military Cargo Jet, the Air Force's F-15 Fighter, the Navy's F-18 Fighter, the Marine Corps' AV-8B Harrier Aircraft, and the Navy's T-45 Goshawk Trainer Aircraft. Each MDC employee working in production areas must wear a badge. On each badge is displayed that employee's identification number. The badge numbers are encoded in computer bar codes that can be scanned with a device for input into MDC's cost-accounting computer system.
According to the government, employees working in MDC's manufacturing facilities have been instructed by supervisors to charge their labor hours for work performed on certain contracts to other unrelated contracts, including the A-12 and C-17 Contracts and other government contracts. An MDC employee would perform work on Contract One pursuant to a given work order. When she completed her work and was ready to clock out, her supervisor would provide her with a different work order connected with Contract Two to use in clocking out with her badge. The cost-accounting computer system would attribute her hours spent on Contract One to hours spent on Contract Two. Then the employee was instructed to wait for six minutes and to use the original work order for Contract One to clock out again. The second clocking out would result in only six minutes being charged to Contract One to give the appearance of legitimacy with all the rest of the time being charged to Contract Two. As a result of the mischarging, many of MDC's reports regarding incurred costs for labor hours to the government were false. The foregoing are allegations.
The Fourth Amended Complaint contains seven counts. Counts I and II are for violations of the FCA. The government has not adopted Counts VII, VIII, and IX of the relator's Second Amended Complaint, but the government views those claims, which are for other violations of the FCA, as still standing *1342 against MDC in this case. Count III is for breach of contract. Count IV is for payment under mistake of fact. Count V is for unjust enrichment. Court VI is for common law fraud. Count VII is brought pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601-613. Counts I-VI relate to the government contracts cited above while Count VII appears to be limited to the A-12 Contract.

I. Defendant's Motion to Dismiss
MDC has filed a motion to dismiss or in the alternative, to strike the Third Amended Complaint. The government opposes that motion. Because the Court has granted the government leave, the Court will view MDC's Motion to Dismiss as attacking the Fourth Amended Complaint.

A. The Standard of Review
When ruling on a motion to dismiss, this Court must take the allegations of the complaint as true, construing the complaint and all reasonable inferences therefrom in a light most favorable to the plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986). Therefore, "a motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Id.
In its Motion to Dismiss, defendant MDC argues that: (1) all allegations related to the A-12 Contract should be dismissed on grounds of federal comity and judicial estoppel; (2) Counts III-V should be dismissed for lack of subject matter jurisdiction; (3) Counts III-V should be dismissed for failure to state a claim; (4) the Fourth Amended Complaint should be dismissed because the government's allegations lack sufficient particularity; and (5) any allegation of fraud in the award of the A-12 Contract in Count VI should be dismissed as barred by the state of limitations.

B. Judicial Estoppel and Federal Comity
In order to address MDC's first argument, further background is necessary. In June of 1991 MDC and GDC filed suit against the government in the Court of Federal Claims pursuant to § 609(a) of the CDA.[1] The contractors challenged the government's default termination of the A-12 Contract.
After years of tumultuous discovery, the Court of Federal Claims held a trial in September of 1993 on the contractors' allegations that the government had improperly terminated the A-12 Contract for default. (Def.Supp.Exhs. E, A at 69-70.) In an order issued on December 9, 1994, the court found that based on the evidence presented at trial, the A-12 contract was not terminated because of contractor default. (Def.Supp.Exh. E at 1.) The Court found that "the contract was terminated because the Office of the Secretary of Defense withdrew support and funding from the A-12." Id. The court vacated the government's decision terminating the A-12 Contract. Id.
Under Schlesinger v. United States, 390 F.2d 702, 709-710, 182 Ct.Cl. 571 (1968), the court was then to treat the government's termination for default as one for convenience and find that the contractors were entitled to have their accounts settled. However, in May of 1995, the court agreed to recognize an exception to Schlesinger. (Def. Supp.Exh. F at 2.) The Court held that a default for convenience would not be entered if the government could prove that MDC and GDC "were so egregiously in default that to impose a termination for convenience would create an unconscionable windfall for plaintiffs such that a court of law could not be a party to the result." Id.
In November of 1995 a trial on the egregious default issue was held. (Defs. Second Supp.Exh. A.) The court found that the government had not met its burden and converted the government's termination for default to one for convenience. Id. at 2. The issue of damages due MDC and GDC remains pending before that court. Id.
MDC now argues that all allegations in the Fourth Amended Complaint regarding to the A-12 Contract should be dismissed on grounds of federal comity and judicial estoppel. According to MDC, "[u]nder the doctrine *1343 of judicial estoppel, a party will be estopped from pursuing a claim if it has already declared its intention not to do so." (Def.Mot. to Dismiss at 16.) Even assuming that the doctrine is accepted in this Circuit, the doctrine does not apply to require the dismissal of the government's allegations regarding the A-12 Contract. In the Court of Federal Claims, the government contended that MDC behaved egregiously and in this case the government claims that MDC behaved fraudulently. The record does not reveal that the government abandoned any claims of fraud in the Court of Federal Claims; the record shows only that the government was unable to prove egregious conduct on the part of MDC to that court's satisfaction. Therefore, the Court will not grant defendant's motion to dismiss on the grounds of judicial estoppel.
"Generally, the doctrine of federal comity permits a court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. Orthmann v. Apple River Campground, 765 F.2d 119, 121 (8th Cir. 1985). Under the "first to file" rule, "where two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." Id. However, the rule is "not intended to be rigid, mechanical, or inflexible, but should be applied in a manner serving sound judicial administration." Id.
In this case, the Court finds that federal comity does not dictate the dismissal of all allegations relating to the A-12 Contract. The issues before this Court and those before the Court of Federal Claims are not the same. The Court of Federal Claims has addressed the narrow issue of why the contracting officer made his decision to terminate the A-12 Contract. The issues before this Court relate to fraud. Whether MDC submitted false claims in violation of the FCA and whether MDC committed common law fraud are claims wholly distinct from the nature of the contracting officer's decision to terminate of the A-12 Contract.
Admittedly, both cases involve the A-12 Contract, and the novel "egregious default" exception recognized by the Court of Federal Claims bears some relation to the standards which will be used in this case for assessing whether MDC committed various fraudulent acts. In addition, the government concedes that recovery in this case might impact the amounts found owing in the Court of Federal Claims action. (Pl.Resp. to Def.Mot. to Dismiss at 6, n. 6.) On the other hand, MDC suggests that it is too late for the government to bring the claims of fraud and FCA violations in the case before the Court of Federal Claims. (Def.Mem. in Supp. of Mot. to Dismiss at 10.)
Such similarities and circumstances do not compel the dismissal of any of the government's fraud and FCA claims as they relate to the A-12 Contract. The fact remains that the government's independent causes of action in the Fourth Amended Complaint are not pending before the Court of Federal Claims. This Court has the jurisdiction to hear the government's claims and will not dismiss them.

C. Counts III, IV, and V: Subject Matter Jurisdiction
MDC has not challenged this Court's jurisdiction to hear the government's FCA and fraud claims in this case. However, MDC does argue that the Court lacks subject matter jurisdiction over the government's claims for breach of contract, payment under mistake of fact, and unjust enrichment. The Court does not agree.
The CDA provides that "all claims by the government against a contractor relating to a contract" must be submitted to a contracting officer for a decision. 41 U.S.C. § 605(a). However, the plain language of the CDA specifically excludes "claims involving fraud." Id. MDC argues that the challenged claims in this case are contract claims and not "claims involving fraud." The government contends that the claims involve fraud because they rest on the same facts as the government's FCA and fraud causes of action.
Any interpretation of a statute must begin with its plain language. Good Samaritan Hosp. v. Shalala, 508 U.S. 402, ___, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368 (1993). Dictionaries are one source of a *1344 word's plain meaning. Mississippi v. Louisiana, 506 U.S. 73, 113 S.Ct. 549, 553, 121 L.Ed.2d 466 (1992). "Involve" is defined as "[t]o include or contain as a part." Webster's II New Riverside University Dictionary 642 (1984). In this case, fraud is an integral part of Counts III, IV, and V: each claim represents another theory of recovery for MDC's alleged fraud. Therefore, the Court finds that Courts III, IV, and V are "claims involving fraud" and can be heard by this Court. See United States ex rel. Mayman v. Martin Marietta Corp., 894 F.Supp. 218, 224 (D.Md. 1995); United States v. Rockwell Int'l Corp., 795 F.Supp. 1131, 1135-38 (N.D.Ga.1992); United States v. JT Constr. Co., Inc., 668 F.Supp. 592, 593-94 (W.D.Tex.1987); BMY-Combat Sys. Div. of Harsco Corp. v. United States, 26 Cl.Ct. 846, 849 (Cl.Ct.1992).

D. Counts II, IV, and V: Rule 12(b)(6)
Alternatively, MDC contends that Counts III-V should be dismissed for failure to state a claim under Rule 12(b)(6). Fed.R.Civ.P. 12(b)(6).
To state a cause of action for breach of contract, plaintiff must allege: (1) that an enforceable contract exists between her and the defendant; (2) that mutual obligations arise under the terms of the contract; (3) that the defendant breached the contract; and (4) that she was damaged by the breach. Rice v. West End Motors, Co., 905 S.W.2d 541, 542 (Mo.Ct.App.1995). In the Fourth Amended Complaint, the government alleges the existence of numerous contracts. (Fourth Am.Compl. at ¶¶ 6, 10, 18, 77.) The government alleges that mutual obligations arose under the contracts. Id. at ¶¶ 10, 77. There are also allegations that MDC breached the contracts and that, as a result, the government was damaged. Id. at ¶¶ 79-80. Therefore, the Court finds that the government has stated a claim for breach of contract in Count III.
To state a cause of action for payment under mistake of fact, plaintiff must allege: (1) that she paid the defendant; (2) that she was mistaken as to a fact; (3) that but for her mistake of fact, she would not have paid; (4) that she was under no legal obligation to pay; and (5) that she is entitled to restitution for the amounts paid. Western Casualty & Sur. Co. v. Kohm, 638 S.W.2d 798, 800 (Mo.Ct.App.1982). In this case, the government alleges that it paid MDC in reliance upon a mistake of fact  the government believed that MDC had billed only for work properly chargeable under certain contracts and that the cost and pricing data submitted for those contracts was current, complete, and accurate. (Fourth Am.Compl. at ¶ 82.) The government asserts that it was not obligated to pay those amounts and that it is entitled to recover them. Id. at ¶ 83. The Court notes that the existence of an express contract does not necessarily preclude recovery of theories of unjust enrichment and restitution, or payment under mistake of fact. Petrie v. LeVan, 799 S.W.2d 632, 635 (Mo.Ct. App.1990). Therefore, the Court will not dismiss Count IV for failure to state a claim.
To state a cause of action for unjust enrichment, plaintiff must allege: (1) that she conferred a benefit on the defendant; (2) that the defendant appreciated the fact of such benefit; and (3) that the defendant accepted and retained that benefit "under circumstances in which retention without payment would be inequitable." Ernst v. Ford Motor Co., 813 S.W.2d 910, 918 (Mo.Ct. Ap.1991). According to the government, it conferred a benefit, money to MDC, and MDC received the money and was not entitled to receive that money. (Fourth Am. Compl. at ¶ 85.) The government has stated a claim for unjust enrichment and the Court will not dismiss Count V.

E. Rule 9(b)
MDC asserts that the Fourth Amended Complaint should be dismissed because the government's allegations lack sufficient particularity as required by Rule 9(b). Fed. R.Civ.P. 9(b). Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The parties hotly contest whether Rule 9(b) applies to the government's FCA claims. The Court need not reach that issue because the Court finds that the Fourth Amended Complaint satisfies the requirements of Rule 9(b).
*1345 A pleading filed in federal court should contain a "short and plain statement of the claim." Fed.R.Civ.P. 8(a). Rule 9(b) marks a departure from the generally applicable notice-pleading standard. The rule is designed "`to inhibit the filing of a complaint as a pretext for the discovery of unknown wrong, protect defendants from the harm that might come to their reputations when charged with acts of moral turpitude, and finally ensure that the allegations are particularized enough to enable defendants to prepare an adequate defense.'" Burt ex rel. McDonnell Douglas v. Danforth, 742 F.Supp. 1043, 1050 (E.D.Mo.1990) (quoting Securities and Exch. Comm'n v. Tiffany Indus., Inc., 535 F.Supp. 1160, 1166 (E.D.Mo.1982)). The sufficiency of the pleading under Rule 9(b) depends "`upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading.'" Id. at 1051 (quoting Payne v. United States, 247 F.2d 481, 486 (8th Cir.1957)).
The Fourth Amended Complaint documents the methods by which MDC allegedly defrauded the government. With regard to charges of submitting inflated cost estimates, the Complaint cites specific government contracts and gives the dates on which the alleged fraudulent submissions occurred. With regard to allegations of claiming improperly billed labor costs, the Complaint outlines how MDC accomplished the mischarging through its automated time accounting system and details to which government contracts the costs were wrongly charged.
The twenty-five page Fourth Amended Complaint does not cite every instance of mischarging. However, given the complexity of this case and length of time during which the fraudulent conduct allegedly occurred, at times spanning the last ten (10) years, the Court finds that the Fourth Amended Complaint states the factual basis for its fraud and FCA claims with sufficient particularity under Rule 9(b).

F. Statute of Limitations
Finally, MDC contends that any allegation of fraud in the award of the A-12 Contract in Count VI should be dismissed as barred by the statute of limitations. Under 28 U.S.C. § 2415(b), tort actions brought by the United States for money damages must be filed within three years after the right first accrues. However, any amount of time during which the government did not know and could not reasonably have known of the facts material to its claims is excluded from the limitations period. 28 U.S.C. § 2416(c).
In this case, MDC claims that any misrepresentations in connection with the A-12 Contract would have occurred in 1987 and that the government's fraud claim therefore falls outside the three-year limitations period. The government claims that it did not learn of the alleged misrepresentations until April of 1995 and that it could not have known about such conduct any earlier. This issue cannot be resolved at the motion to dismiss phase because of an obvious factual dispute. In light of the foregoing, the Court will deny defendant MDC's Motion to Dismiss.

II. Defendant's Motion to Compel
Under the FCA, when the relator files suit, she must serve the government with a "written disclosure of substantially all material evidence and information" in her possession. 31 U.S.C. § 3730(b)(2). MDC seeks to compel production of that written disclosure. Both the government and relator O'Keefe oppose the motion.
The government argues that to allow discovery of the written disclosure would subvert the purposes of the FCA by discouraging citizens from coming forward and reporting fraud and by undermining the general law enforcement goals of the FCA. The government urges this Court to interpret the FCA as protecting the written disclosure from MDC's discovery efforts.
The statute is silent on this issue, and no possible construction of the language of § 3730(b) creates a privilege protecting the written disclosure from discovery. The statute simply does not address the issue of discoverability. The fact that the statute *1346 does not require the written disclosure to be filed under seal or to be served on defendant upon the lifting of the seal is immaterial.
This Court will not create an absolute privilege protecting the written disclosure from the defendant's discovery efforts where no possible construction of the FCA supports such a privilege. The government relies on policy arguments. While policy concerns may aid a court in construing statutory language, policy concerns should not be used to support impermissible judicial legislation. Therefore, the Court will be guided by the applicable Federal Rules of Civil Procedure relating to discovery.
MDC argues that it is entitled to discover the written disclosure under Rule 26(b)(1) of the Rules of Civil Procedure. Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). However, Rule 26 prohibits discovery of materials protected by the work product doctrine. The Rule provides that a party may not discover ordinary work product, that is, "documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative," unless the party seeking disclosure demonstrates that she has "substantial need of the materials in the preparation of the party's case and ... is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). Opinion work product, which reveals the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of party concerning the litigation," is absolutely protected regardless of any showing of substantial need or undue hardship. Fed.R.Civ.P. 26(b)(3). See Shelton v. American Motors Corp., 805 F.2d 1323, 1328 (8th Cir.1986). Relator O'Keefe asserts that the written disclosure is protected work product.
The burden is on the party asserting a privilege to establish the applicability of that privilege. In re Grand Jury Proceedings, 655 F.2d 882, 887 (8th Cir.1981). Relator O'Keefe has not provided the Court with the written disclosure for in camera inspection, and so the Court cannot determine whether the written disclosure is opinion work product. However, the Court finds that the written disclosure is ordinary work product. The plain language of the FCA requires the relator to prepare the document "in anticipation of litigation." 31 U.S.C. § 3730(b)(2).
The burden now shifts to MDC to show substantial need and undue hardship under Rule 26(b)(3). MDC has sustained its burden. The written disclosure should simply contain all the relevant factual information in relator O'Keefe's possession at the time he filed suit. The document will assist MDC in understanding the allegations against it and in assessing whether the relator has standing to sue as the "original source" of information. United States ex rel. Stone v. Rockwell Int'l Corp., 144 F.R.D. 396, 401 (D.Colo.1992) (citing 31 U.S.C. § 3730(e)(4)(A)). It is true that MDC could obtain much of the information in the written disclosure through the discovery process. However, to force MDC to compile such information through interrogatories, document requests, and depositions would place an undue burden on MDC: this case is complex and discovery will be voluminous and lengthy. Furthermore, all the courts to address this issue in published opinions have compelled the relator and government to produce the written disclosure on similar grounds. United States ex rel. Burns v. A.D. Roe Co., Inc., 904 F.Supp. 592, 594-95 (W.D.Ky.1995); United States ex rel. Robinson v. Northrop Corp., 824 F.Supp. 830, 838-39 (N.D.Ill.1993); Grand ex rel. United States v. Northrop Corp., 811 F.Supp. 333, 337 (S.D.Ohio 1992); Stone, 144 F.R.D. at 401. Therefore, the Court will grant defendant's Motion to Compel.

III. Relator's FCA Claims
As discussed above, the government did not adopt Counts VII, VIII, and IX of relator O'Keefe's Second Amended Complaint. However, the government has informed the Court that it views those claims as still standing. Count VII is brought by O'Keefe on behalf of the government for false claims submitted by MDC with regard to "unverified" materials used in MDC's work on government contracts. Counts VIII and IX are *1347 claims personal to O'Keefe for retaliatory discharge under the FCA and for the intentional infliction of emotional distress under state law.
Relator seeks a Court order requiring MDC to respond to Counts VII, VIII, and IX of the Second Amended Complaint. In the alternative, relator seeks leave to file an amended complaint. MDC opposes relator's motion. MDC argues that relator O'Keefe is precluded from pursuing claims which the government has abandoned.
The FCA does allow the government to intervene and prosecute a relator's case; however, the relator is not removed from the case upon the government's intervention. The statute expressly provides that once the government has intervened, the relator "shall have the right to continue as a party to the action." 31 U.S.C. § 3730(c).
In this case, the government has intervened with respect to all of relator O'Keefe's claims but three. There is nothing in the FCA which prevents the relator from pursuing these claims. The only limitations on the relator's participation in the case are contained in § 3730(c)(2). Most of the restrictions allow the government to petition the Court to limit the relator's role in the litigation. In this case, the government does not object to the relator's pursuit of Counts VII, VIII, and IX. Therefore, the Court will allow relator O'Keefe to maintain the claims at issue.
Defendant MDC's concern over relator's reliance on the Second Amended Complaint is well taken. Therefore, the Court will allow relator to file a Third Amended Complaint which details his three claims against MDC. Relator should avoid redundancy and adopt and incorporate the government's allegations in its Fourth Amended Complaint when possible. MDC may then incorporate some of its responses to the government's allegations in its answer to relator's Third Amended Complaint. Accordingly,
IT IS HEREBY ORDERED that the government's Motion for Leave to File a Fourth Amended Complaint is granted.
IT IS FURTHER ORDERED that defendant's Motion for Oral Argument (Doc. No. 54) is denied.
IT IS FURTHER ORDERED that defendant's Request to Take Judicial Notice (Doc. No. 53) is granted.
IT IS FURTHER ORDERED that defendant's Motion to Dismiss or in the Alternative, to Strike (Doc. No. 43) is denied.
IT IS FURTHER ORDERED that defendant's Motion to Compel (Doc. No. 56) is granted and that on or before March 27, 1996 the government and relator shall provide defendant with a copy of the written disclosure discussed herein.
IT IS FURTHER ORDERED that relator's Motion to Order McDonnell Douglas Corporation to Respond to his Pending Claims, or in the Alternative, for Leave to Amend (Doc. No. 64) is granted to the extent that leave is granted for relator to file a Third Amended Complaint on or before April 1, 1996 and denied in all other respects.
NOTES
[1] The Court will take judicial notice of the proceedings in the Court of Federal Claims. Hart v. Comm'r of Internal Revenue, 730 F.2d 1206, 1207 n. 4 (8th Cir.1984).