152 F.Supp.2d 443 (2001)
UNITED STATES of America ex rel. Claudette PHIPPS, Plaintiff,
v.
COMPREHENSIVE COMMUNITY DEVELOPMENT CORPORATION, d/b/a Soundview Health Center, Nonprofit Community Resources, Inc., Pedro Espada, Sandra Love, Kenneth Brennan, Esther Hill, and Maria Cruz, each in their official and individual capacities, Defendants.
No. 99 Civ. 5172(JGK).
United States District Court, S.D. New York.
July 16, 2001.
*444 *445 *446 *447 Dan Cherner, Law Office Dan Cherner, New York City, for Plaintiff.
Martin Szold, Arthur R. Block, New York City, for Defendants.

OPINION AND ORDER
KOELTL, District Judge.
Plaintiff Claudette Phipps ("Phipps") brings this qui tam action on behalf of the United States against Comprehensive Community Development Corporation, d/b/a Soundview Health Center ("CCDC"), Nonprofit Community Resources, Inc. ("NCR"), Pedro Espada ("Espada"), Sandra Love ("Love"), Kenneth Brennan ("Brennan"), Esther Hill ("Hill"), and Maria Cruz ("Cruz"), each in their official and individual capacities pursuant to the False Claims Act, 21 U.S.C. § 3729 et seq. ("FCA"). Phipps has also brought common law claims for unjust enrichment, fraud, and mistake of fact. Phipps alleges that the defendants falsely represented that certain individuals were enrolled in CCDC's Women, Infants, and Children *448 ("WIC") program and submitted false claims, statements, records, and information to the federal government ("Government") and to New York State to obtain funds from various federal and state programs. The defendants CCDC, Espada, Love, Brennan, Hill and Cruz (collectively the "Moving Defendants") now move pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings, or in the alternative, for partial summary judgment on the grounds that this Court lacks subject matter jurisdiction over the plaintiff's qui tam action and that the plaintiff's complaint does not meet the requirements of Fed.R.Civ.P. 9(b).[1]

I.
The same standards apply to a Rule 12(c) motion for judgment on the pleadings and to a Rule 12(b)(6) motion to dismiss for failure to state a claim. See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir.1999); Narvarte v. Chase Manhattan Bank, N.A., 969 F.Supp. 10, 11 (S.D.N.Y. 1997). The Court "must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir.1994); see also Madonna v. United States, 878 F.2d 62, 65 (2d Cir.1989); National Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Labs., 850 F.2d 904, 909 n. 2 (2d Cir.1988) (indicating that the Court treats a motion for judgment on the pleadings as if it were a motion to dismiss); Slavsky v. New York City Police Dep't, 967 F.Supp. 117, 118 (S.D.N.Y.1997), aff'd, 159 F.3d 1348 (2d Cir.1998). A court should not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. See Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir.1994) (citing Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In deciding the motion, the Court can consider documents referenced in the complaint and documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit. See Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir.1993); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759, 762 (2d Cir.1991); Skeete v. IVF America, Inc., 972 F.Supp. 206, 208 (S.D.N.Y.1997). The Court can also consider "matters of which judicial notice may be taken." See Leonard F. v. Israel Discount Bank of New York, 199 F.3d 99, 107 (2d Cir.1999) (quotation omitted); see also Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir.1991).
Although subject matter jurisdiction is usually challenged by way of a Rule 12(b)(1) motion to dismiss, it may also be raised on a Rule 12(c) motion for judgment on the pleadings. See Ryan v. Volpone Stamp Co., Inc., 107 F.Supp.2d 369, 375 (S.D.N.Y.2000); Brooks v. New York City Housing Authority, No. 98 Civ. 5016, 1999 WL 395387, at *2 (S.D.N.Y. Jun. 15 1999); Peters v. Timespan Comm., Inc., No. 97 Civ. 8750, 1999 WL 135231, at *2 (S.D.N.Y. Mar. 12, 1999). A Rule 12(c) motion for judgment on the pleadings *449 based upon a lack of subject matter jurisdiction is treated as a Rule 12(b)(1) motion to dismiss the complaint. See Peters, 1999 WL 135231, at *2. A party invoking federal jurisdiction "must allege in [its] pleading the facts essential to show jurisdiction," and "must support [those facts] by competent proof." See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 179, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); see also Board of Educ. of the Mount Sinai Union Free Sch. Dist. v. New York State Teachers Retirement Sys., 60 F.3d 106, 109 (2d Cir.1995) (citation omitted); United States ex rel. Pentagen Tech. Int'l Ltd. v. Caci Int'l Inc., No. 96 Civ. 7827, 1997 WL 473549, at *6 (S.D.N.Y. Aug. 18, 1997), aff'd, 172 F.3d 39 (2d Cir.1999). In considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction. See Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd., 968 F.2d 196, 198 (2d Cir.1992). Where subject matter jurisdiction is challenged, however, a court may consider materials outside the pleadings, such as affidavits, documents and testimony. See Antares Aircraft v. Fed. Rep. of Nigeria, 948 F.2d 90, 96 (2d Cir.1991); Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir.1986). Thus, the standard used to evaluate a Rule 12(b)(1) claim is similar to that for summary judgment under Fed.R.Civ.P. 56. See Kamen, 791 F.2d at 1011. The plaintiff has the ultimate burden of proving the Court's jurisdiction by a preponderance of the evidence. See Malik v. Meissner, 82 F.3d 560, 562 (2d Cir.1996); see also Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.1991) (when subject matter jurisdiction is challenged under Rule 12, plaintiff must bear burden of persuasion); Martin v. Reno, No. 96 Civ. 7646, 1999 WL 527932 at *1 (S.D.N.Y. July 22, 1999).[2]

*450 II.
The following facts are undisputed for purposes of this motion except where specifically noted. Phipps was the Director of defendant CCDC's Women, Infants, and Children program ("WIC program") from on or about August 1990 until on or about May 6, 1999. (Compl. ¶¶ 4, 20; Declaration of Maria Cruz dated January 25, 2001 ("Cruz Decl."), n. 2; Pl.'s 56.1 Counter-St. ¶ 1.) CCDC is a New York Corporation incorporated on or about April 21, 1987, doing business as Soundview Health Center. (Compl.¶ 5.) Defendant NCR is a New York Corporation incorporated on or about April 14, 1993. (Compl.¶ 6.) Defendant Espada is the chairman and/or Director of CCDC. (Compl.¶ 7.) Defendant Love is a Senior Vice-President for CCDC. (Compl.¶ 8.) Defendant Brennan is the Chief Financial Officer for CCDC. (Compl.¶ 9.) Defendant Cruz is the Executive Director of NCR. (Compl.¶ 10.) Defendant Hill is a Coordinator of Human Resources for CCDC. (Compl.¶ 11.)
The Child Nutrition Act, 42 U.S.C. § 1786 et. seq. ("CNA"), was enacted to provide supplemental foods and nutrition education to women, infants, and young children from families with inadequate income. See 42 U.S.C. § 1786(a). The CNA provides for grants to assist State agencies to provide, through local agencies, supplemental foods and nutrition education to eligible women and children. See 42 U.S.C. § 1786(c). The State agency receiving assistance must submit a plan of operation and administration to the Secretary of Agriculture containing various information designed to implement the purposes of the CNA. See 42 U.S.C. § 1786(f). CCDC runs a WIC program by authority and contract granted by New York State by authority granted to New York State through the CNA. (Compl. & 5.)
The Ryan White Comprehensive AIDS Resources Emergency Act of 1990, 42 U.S.C. § 300ff et seq. ("White Act"), was enacted "to provide emergency assistance to localities that are disproportionately affected by the Human Immunodeficiency Virus epidemic and to make financial assistance available to States and other public or private nonprofit entities to provide for the development, organization, coordination, and operation of more effective and cost efficient systems for delivery of essential services to individuals and families with HIV disease." 42 U.S.C. § 300ff. CCDC allegedly receives grants pursuant to the White Act and/or other federal programs which provide monies for AIDS research, treatment, and/or education. (Compl.¶ 19.)
In or around 1998, the New York State Department of Health ("DOH") initiated an investigation into CCDC's WIC program based upon allegations made to the DOH by current and/or former employees of CCDC. (Compl. ¶ 23; Defs.' 56.1 St. ¶ 2.) The DOH investigation, which Phipps alleges is still ongoing, is headed by Fred Fogel, a Regional Chief Investigator with DOH's Investigative Services Unit. (Compl. ¶24; Defs.' 56.1 St. ¶ 3.) Phipps alleges that according to Mr. Fogel, false information was provided as to certain women and/or children to the WIC program, so as to enroll these women and/or children into CCDC's WIC program when, in fact, these individuals were not eligible for the WIC program. (Compl.¶ 25.) Phipps alleges, in particular, that certain relatives of defendants Espada and Love received benefits from the WIC program that they were not eligible to receive. (Compl.¶¶ 26-28.) In or about December 1998, Mr. Fogel allegedly appeared at CCDC and requested certain files from *451 Phipps. (Defs.' 56.1 St. ¶ 4; Pl.'s 56.1 Counter-St. ¶ 4.) Phipps informed some of the individual defendants about the visit and she was told to cooperate with the DOH. (Def.'s 56.1 St. ¶ 6; Pl.'s 56 Counter St. ¶ 6.)
Phipps also alleges that the defendants engaged in various fraudulent transactions by misappropriating funds granted to CCDC and/or NCR by the State or Federal Government pursuant to the CNA and White Act. Phipps contends that Love presented Phipps with two vouchers, one for $10,000.00 and one for $20,000.00, the first voucher for payment to a company run by Espada's son and the second voucher for payment to a company run by Espada. (Compl.¶ 31.) Although Phipps asserts that she refused to process the vouchers, she alleges that the vouchers were eventually processed by the defendants and that payment was made out of the WIC program on the vouchers, constituting false claims for services and/or goods. (Compl.¶ 32.)
Phipps also alleges that in or around 1997, when Phipps would go on vacation and be absent, the WIC program would be charged a portion of Love's and/or Cruz's salary despite the fact that neither Love or Cruz performed any of Phipps's duties in or absence. (Compl.¶ 33.) Phipps also asserts that Espada's spouse Carmine Rosado was employed by CCDC as Director of Marketing in 1997 and 1998 despite the fact that she did not perform any marketing services, but rather, babysat. (Compl.¶ 35.) Phipps further alleges that the defendants submitted false information to the Government to receive monies pursuant to the White Act in the form of vouchers for services from doctors, namely Dr. Verdialis, that were not actually performed. (Compl.¶¶ 36-43.)
On April 9, 1999, Phipps filed a charge of discrimination and harassment with the United States Equal Employment Opportunity Commission ("EEOC"). (Defs.' Ex. E.) Phipps filed the present action under seal on July 15, 1999. The Government notified the Court that it was declining to intervene on September 12, 2000. See Govt.'s Notice of Election to Decline Intervention dated September 12, 2000. In her complaint, Phipps alleges numerous fraud claims against the defendants pursuant to the FCA, 31 U.S.C. §§ 3729(a)(1), (a)(2), (a)(3) & (a)(7), with respect to funds obtained by CCDC from various federal and state programs under the CNA and the White Act. (Counts 1-8). Phipps also alleges numerous common law claims for unjust enrichment (Counts 9-13), fraud (Counts 14-18), and mistake of fact (Counts 19-23). In response to the present motion, the plaintiff withdrew Counts 9, 12-14, 17, 18, 22 and 23, containing her claims based on misuse of funds from New York State agency grants and any claims or portions of claims alleging improper enrollment of individuals in CCDC's WIC program.

III.
Initially, Phipps's common law claims must be dismissed because Phipps lacks standing to bring common law claims on behalf of the Government under the FCA. The FCA permits private citizens to "bring a civil action for a violation of section 3729" of the FCA on behalf of that person and the Government. 31 U.S.C. § 3730(b)(1). The FCA also allows a relator, such as Phipps, to proceed with the action where the Government declines to intervene. See 31 U.S.C. § 3730(b)(4). As the Supreme Court recently stated, "[t]he FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim." Vermont Agency of Natural Resources v. United States ex. rel Stevens, 529 U.S. 765, 773, 120 S.Ct. *452 1858, 146 L.Ed.2d 836 (2000). Thus, the FCA permits a relator alleging an FCA violation to meet the "injury in fact" standing requirement. See id. at 773-34, 120 S.Ct. 1858. While the FCA gives a relator the right to bring an action for a violation of the FCA, the FCA "does not give relators the right to assert common law claims on behalf of the United States." United States v. Eastman Kodak Co., 98 F.Supp.2d 141 (D.Mass.2000) (citing United States ex rel. Long v. SCS Bus. & Tech. Inst., 999 F.Supp. 78, 92 (D.D.C.1998), rev'd on other grounds, 173 F.3d 870 (D.C.Cir.1999)); see also United States ex. re rel Grant v. Rush-Presbyterian/St. Luke's Med. Ctr., No. 99 C 06313, 2001 WL 40807, at *6 (N.D.Ill. Jan. 16, 2001); United States ex. rel Mayman v. Martin Marietta Corp., 894 F.Supp. 218, 225-26 (D.Md.1995). In this case, Phipps brings claims for unjust enrichment, fraud and mistake of fact. Phipps, however, does not allege that she suffered an injury in fact and is asserting these claims on behalf of the Government and not herself. Because she has not been assigned the right to bring any such claim, she lacks standing to assert these common law claims and thus her common law claims are dismissed. At the argument of the motion, the plaintiff agreed that all of the common law claims claims 9 though 23should be dismissed for lack of standing.

IV.
The defendants move to dismiss the plaintiff's remaining claims on the grounds that the court lacks subject matter jurisdiction over Phipps' claims.
The qui tam provisions of the FCA empower private persons, known as "relators," to "bring a civil action for a violation of [the FCA]" on behalf of the United States against persons who knowingly submit false or fraudulent claims to the government for payment in violation of 31 U.S.C. § 3729(a). 31 U.S.C. § 3730(b)(1). The action is brought on behalf of the Government, see 31 U.S.C. § 3730(b)(1), and relators must file a qui tam action under court seal and supply the Government with a copy of the complaint, as well as evidence and information to support the charges. See 31 U.S.C. § 3730(b)(2). The FCA gives the Government at least sixty days to review the claims before the defendant is served a copy of the complaint. See 31 U.S.C. §§ 3730(b)(2) & (3). If the Government chooses to intervene in the action, it assumes the role of lead prosecutor. See 31 U.S.C. §§ 3730(b)(4)(A) & (c)(1). Where the Government declines to intervene, the relator may serve the complaint on the defendant and proceed with the action. See 31 U.S.C. §§ 3730(b)(4)(B) & (c)(3). If the prosecution is successful, the relator is entitled to receive a portion of the proceeds. See 31 U.S.C. § 3730(d).
Subject matter jurisdiction over FCA actions, such as this one, is limited by 31 U.S.C. § 3730(e)(4) which states:
(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided information to the Government before filing an action under this section which is based upon the information.
31 U.S.C. § 3730(e)(4); see also United States ex rel. Kreindler & Kreindler, 985 *453 F.2d 1148, 1157 (2d Cir.1993) (noting that the satisfaction of Section 3730(e)(4) is an issue of subject matter jurisdiction). This section "is intended to bar `parasitic lawsuits' based upon publicly disclosed information in which would-be relators `seek remuneration although they contributed nothing to the exposure of the fraud.'" Kreindler, 985 F.2d at 1157 (quoting United States ex rel. John Doe v. John Doe Corp., 960 F.2d 318, 319 (2d Cir.1992)).
Section 3730(e)(4)(A) establishes a two-part test for determining if a court has subject matter jurisdiction. First, a court must determine whether the "allegations or transactions" on which the qui tam action is based were publicly disclosed in one of the manners listed in the statute. Public disclosure occurs when the allegations of fraud are placed in the "public domain." See John Doe, 960 F.2d at 322; See United States ex rel. Dick v. Long Island Lighting Co., 912 F.2d 13, 18 (2d Cir.1990). If information is equally available to the relator as it is to strangers to the fraud transaction had they chosen to look for it, then there is public disclosure. See Kreindler, 985 F.2d at 1158; United States ex rel. Stinson, Lyons Gerlin & Bustamante P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1155-56 (3d Cir.1991); Pentagen, 1997 WL 473549, at *6. The jurisdictional bar applies if the qui tam action is based in any part on public information obtained through independent investigation. See Kreindler, 985 F.2d at 1158 (citing United States ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548, 553 (10th Cir.1992)). If the allegations were not publicly disclosed, Section 3730(e)(4)(A) does not bar jurisdiction and there is no need to engage in the second part of the analysis. See United States ex rel. Mikes v. Straus, 931 F.Supp. 248, 253 (S.D.N.Y.1996).
If the "allegations or transactions" were in fact publicly disclosed, the court must then consider whether the relator is an original source of the information upon which the claim is based. See Wang v. FMC Corp., 975 F.2d 1412, 1416 (9th Cir.1992); Mikes, 931 F.Supp. at 253. To be an original source, the relator must: (1) have "direct and independent knowledge of the information on which the allegations are based;" and (2) have "voluntarily provided the information to the Government before filing" a qui tam action under the FCA. See 31 U.S.C. § 3730(e)(4)(B). The Court of Appeals for the Second Circuit also requires that the relator have "directly or indirectly been a source to the entity that publicly disclosed the allegations on which a suit is based." Dick, 912 F.2d at 16. If the relator is an original source, the action may proceed despite the fact that the information was publicly disclosed. See Mikes, 931 F.Supp. at 252.
Portions of the claims that the plaintiff has not agreed to withdrawnamely claims 1 through 8relate to allegations that persons were improperly enrolled in the WIC program. The plaintiff has made no contention that these allegations were not in the public domain or that she was the original source of those allegations and thus she has withdrawn any portions of any claims based on those allegations.
While the plaintiff has attempted to salvage remaining portions of claims 1 through 8 by alleging that they are based on alleged fraud, as opposed to claims based on improper enrollment in the WIC program, it is clear that the Court lacks subject matter jurisdiction of those fraud claims also. Phipps's remaining claims those having to do with allegations of fraudulent misuse of monies obtained from federal grants under the CNA and the White Actwere based on allegations and transactions that were publicly disclosed by DOH in the course of its administrative investigation. The plaintiff, in her EEOC charge, specifically stated:

*454 Around December 1998, I became aware that the New York State Department of Health Investigative Services Unit had initiated an investigation into whether people had improperly enrolled into the WIC program at Soundview, and whether funds had been misappropriated.
(Defs.' Ex. E, ¶ 6; Pl.'s 56.1 Counter-St. ¶ 12.) Thus, by Phipps's own admission in her EEOC proceedings, her remaining allegations of fraudulent misuse of Government funds are based, at least in part, on allegations or transactions disclosed to Phipps by DOH in the course of an administrative investigation. As the Court of Appeals for the Second Circuit has stated:
Once allegations of fraud are revealed to members of the public with no prior knowledge thereof, the government can no longer throw a cloak of secrecy around the allegations; they are irretrievably released into the public domain.
John Doe, 960 F.2d at 323. Moreover, the Court of Appeals has stressed that the statute bars a qui tam action "based in any part upon publicly disclosed allegations or transactions." Kreindler, 985 F.2d at 1158 (internal citation and quotation marks omitted). The DOH in this case divulged the allegations of fraud and therefore the allegations were publicly disclosed. John Doe, 960 F.2d at 322-23 (finding public disclosure where Government investigators divulged allegations of fraud to innocent employees).
Moreover, Phipps has not established that she was the original source of the information on which the allegations of fraud were based. Phipps stated in her EEOC charge that she had "since learned that the [DOH] investigation was begun by some complaint that was supposedly made by an employee or employees at Soundview." (Defs.' Ex. E, ¶ 7.) Phipps also admits that, although she did obtain "some" information with respect to improprieties in the WIC program in part through her own review of WIC files and documents, she has no reason to believe that she caused the initiation of the DOH investigation. (Pl.'s 56.1 Counter-St. ¶¶ 14-15.) In addition, Phipps presents no evidence that she voluntarily provided any information to the Government with respect to the alleged misappropriation of funds before filing this qui tam action or that she has directly or indirectly been a source of information to the DOH concerning the alleged misappropriation of funds.
Accordingly, because Phipps's qui tam action is based upon public disclosure of allegations or transactions within the meaning of Section 3730(e)(4)(A) and because she is not the original source of the pertinent information, this Court does not have subject matter jurisdiction over the present action and thus Phipps's Complaint is dismissed with prejudice.

V.
The Moving Defendants also argue that Phipps's allegations of fraud do not meet the particularity requirement of Fed.R.Civ.P. 9(b). Fed.R.Civ.P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The pleading requirements of Rule 9(b) apply to FCA claims. See Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1476 (2d Cir. 1995). To meet the requirements of Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993). Although Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent. *455 Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994). This strong inference can be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id.; accord PI, Inc. v. Ogle, 932 F.Supp. 80, 84 (S.D.N.Y.1996). Ordinarily, allegations of fraud cannot be founded solely "upon information and belief," except as to those matters particularly within the opposing party's knowledge; in the latter instance, allegations must be accompanied by statements of facts upon which such belief is reasonably founded. See Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990); Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir.1986); Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C., No. 99 Civ. 3227, 2000 WL 1448635, at *7 (S.D.N.Y. Sept. 28, 2000).
The Complaint's allegations of fraud on the part of the Moving Defendants are insufficient under Rule 9(b). Initially, many of Phipps's allegations of fraudulent misappropriation of funds received from the Government through the WIC program and the White Act upon which her remaining claims are based are made "upon information and belief." (Compl.¶¶ 32, 35, 36-37, 43.) Phipps, however, does not argue and has not established that the alleged fraudulent misappropriation of funds is a matter particularly within the Moving Defendants' knowledge. See United States ex rel. DeCarlo v. Kiewit/AFC Enter., Inc., 937 F.Supp. 1039, 1049 (S.D.N.Y.1996). Indeed, Phipps was the Director of the WIC program at CCDC for almost nine years and claims to have reviewed files in connection with her complaint. Many of Phipps's allegations contained in the complaint are also conclusory. Phipps has not specified the dates on which the purported false statements and transactions were made and does not provide specific details regarding any alleged false vouchers or statements. See United States ex rel. Vallejo v. Investronica, Inc., 2 F.Supp.2d 330, 336 (W.D.N.Y.1998). To the extent that vouchers were submitted by a third party doctor, the plaintiff fails to allege any motive. Moreover, the plaintiff has not alleged facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness by the Moving Defendants. Any allegations in the amended complaint that the Moving Defendants acted with conscious disregard for the truth are conclusory and vague and are insufficient to allege fraudulent intent under Rule 9(b). Thus, Phipps's FCA claims brought against the Moving Defendants must also be dismissed because they do not meet the requirements of Fed.R.Civ.P. 9(b).
Phipps requests leave to replead to cure any pleading deficiencies in the complaint. Ordinarily, dismissal based on failure to plead fraud with particularity under Fed.R.Civ.P. 9(b) is without prejudice to a plaintiff's filing an amended complaint to cure the deficient pleading. See Acito v. IMCERA Group, Inc., 47 F.3d 47, 54-55 (2d Cir.1995) ("Leave to amend should be freely granted, especially where dismissal of the complaint [is] based on Rule 9(b)."); Luce v. Edelstein, 802 F.2d 49, 56-57 (2d Cir.1986) ("Complaints dismissed under Rule 9(b) are `almost always' dismissed with leave to amend." (citation omitted)). However, leave to amend may be denied when such amendment would be futile. Acito, 47 F.3d at 55; Mackensworth v. S.S. Amer. Merchant, 28 F.3d 246, 251 (2d Cir.1994). In this case, it is not appropriate to grant Phipps's request because the Court has determined that it does not have subject matter jurisdiction over this action. Moreover, although this action has been pending for some time, and Phipps was in a position to have knowledge of any valid claims, she has not *456 proffered any evidence to suggest that she could even cure the Rule 9(b) deficiencies in her complaint.

CONCLUSION
For the reasons explained above, the motion by the Moving Defendants to dismiss pursuant to Fed.R.Civ.P. 12(c) is granted and the complaint is dismissed with prejudice. The Moving Defendants have also sought an award of attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d)(4). Any such application, together with any supporting arguments and justification, is to be submitted within ten (10) days. The plaintiff may respond ten (10) days thereafter. The Moving Defendants may reply five (5) days thereafter.
SO ORDERED.
NOTES
[1] The remaining defendant, NCR, has not been served with the summons and complaint and the plaintiff's counsel represented at the argument of the pending motion that NCR would not be served. The Moving Defendants also sought judgment on the pleadings with respect to certain of the plaintiff's claims on the grounds that there is no basis for a qui tam action under the FCA based upon alleged injuries suffered by New York State involving non-federally funded programs. As discussed below, the plaintiff has withdrawn those claims.
[2] The Moving Defendants moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings on the ground that the Court lacks subject matter jurisdiction, or in the alternative, for partial summary judgment pursuant to Fed.R.Civ.P. 56 on that basis. Phipps argues that the Court should not convert the Moving Defendants' motion to a summary judgment motion because there has been no reasonable opportunity for discovery and, if the Court is inclined to convert the motion to a summary judgment motion, discovery is needed on the issue. As discussed above, however, a Rule 12(c) motion for judgment on the pleadings based upon a lack of subject matter jurisdiction is treated as a Rule 12(b)(1) motion to dismiss the complaint. Because the Court, in deciding a Rule 12(b)(1) motion, may consider materials outside the pleadings, such as affidavits and documents, it is not necessary to treat the Moving Defendants' Rule 12(c) motion as a motion for summary judgment in order to consider materials outside the pleadings.

In any event, in determining whether it is proper to convert a motion to dismiss into a motion for summary judgment, the essential inquiry "is whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." Krijn v. Pogue Simone Real Estate Co., 896 F.2d 687, 689 (2d Cir.1990) (internal quotations omitted). Because the Moving Defendants specifically moved in the alternative for partial summary judgment pursuant to Rule 56, Phipps had adequate notice of the motion and the possibility that facts outside the pleadings would be considered on the issue of whether the Court had subject matter jurisdiction. The plaintiff had the opportunity to present any evidence in response to the motion for partial summary judgment. Moreover, even if the Moving Defendants' motion based on jurisdictional grounds was viewed as a partial motion for summary judgment, the partial motion is directed solely to the issue of the Court's subject matter jurisdiction and the requisite evidence to establish jurisdiction under the FCA is largely within the knowledge or control of Phipps and not the Moving Defendants. Thus, there is no need for discovery from the Moving Defendants for Phipps to adequately respond to the partial motion.