UNITED STATES of America, The State of New York, ex rel. Associates Against Outlier Fraud, Plaintiffs,

v.

HURON CONSULTING GROUP, INC., Huron Consulting Group, LLC, Huron Consulting Services, LLC, and Empire Health Choice Assurance, Inc. d/b/a Empire Medicare Services, Defendants.

No. 09 Civ. 1800 (JSR).

United States District Court, S.D. New York.

Feb. 16, 2012.

**466**

Philip Roy Michael, Michael Law Group, Kathy Sue Marks, U.S. Attorney's Office, Paul Mahoney, Office of the Attorney General, New York, NY, for Plaintiffs.

Robert Salcido, Jonathan Persons Robell, Robert Keith Huffman, Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, DC, Michael J. Tuteur, Epstein, Becker & Green, P.C., Boston, MA, David W. Simon, Foley & Lardner LLP, Milwaukee, WI, Michael D. Leffel, Foley & Lardner LLP, Madison, WI, Robert Allen Scher, Foley & Lardner, LLP, New York, NY, for Defendants.

### MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Defendants move to dismiss plaintiff relator's Third Amended Complaint in this qui tam action. This action alleges violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, and the analogous New York False Claims Act, N.Y. State Fin. Law § 187 et seq., in connection with the submission of Medicare and/or Medicaid reimbursement forms seeking outlier reimbursement. The plaintiff Associates Against Outlier Fraud ("the relator") filed its First Amended Complaint on December 9, 2010, and defendants Huron Consulting Group, Inc. ("Huron") and Empire Health Choice Assurance, Inc. ("Empire") filed motions to dismiss on February 2, 2010. On August 25, 2010, 2010 WL 3467054, the Court issued a Memorandum Order dismissing with prejudice the state law claim against Empire and dismissing without prejudice the remaining claims in the First Amended Complaint. See 08/25/10 Memorandum Order at 6-7. On October 6, 2010, the relator filed its Second Amended Complaint and pled new versions of all of the claims that the Court had previously dismissed without prejudice except for the conspiracy charge. Id. at 6, The defen-

dants filed new motions to dismiss on October 19, 2010, and the Court issued an Order on December 30, 2010 denying defendants' motions to dismiss and a Memorandum on January 24, 2011, 2011 WL 253259, explaining the reasons for that decision. On March 18, 2011, the relator filed its Third Amended Complaint to correct which "Huron" entities the relator meant to name as defendants in this case.

On May 16, 2011, the Supreme Court of the United States issued an opinion in *Schindler Elevator Corp. v. United States ex rel. Kirk,* which bears on the Court's subject matter jurisdiction in this case. — U.S. ——, 131 S.Ct. 1885, 179 L.Ed.2d 825 (2011). In *Schindler,* the Supreme Court held that documents issued by government agencies in response to requests made under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, constituted publicly disclosed "reports" under the False Claims Act that trigger the Act's public disclosure bar against qui tam actions and deprive a district court of jurisdiction. *Schindler,* 131 S.Ct. at 1889 (interpreting 31 U.S.C. § 3730(e)(4)(A)). In light of this holding, defendants requested permission to file motions to dismiss the relator's Third Amended Complaint addressed to the issue presented in *Schindler.* The Court granted the request, defendants filed their motions on June 20, 2011, and following a full round of briefing, the Court heard oral argument on July 25, 2011. At that argument, however, there was only sufficient time to fully address defendant Empire's motion to dismiss. Accordingly, the Court allowed defendant Huron to submit a supplemental brief after oral argument, and the relator to file a supplemental brief in response to Huron's brief. Having fully considered the parties' extensive briefing and oral arguments, the Court now hereby denies both defendants' motions to dismiss.

Plaintiff's basic allegations are detailed in the Court's Memorandum Order of August 25, 2010 and Memorandum of January 24, 2011, with which full familiarity is presumed. *See* 08/25/10 Memorandum Order at 1–3; 01/24/11 Memorandum at 2–8. In short, plaintiff alleges that defendant Huron, through its control of St. Vincent's Medical Center, submitted fraudulently inflated "outlier" claims to the government for reimbursement, a practice known as "turbo-charging." *See* Plaintiff's Third Amended Complaint dated March 17, 2011 ("TAG") ¶¶ 1–2, 27–29, 63. Plaintiff further alleges that Empire, in its role as a financial intermediary processing outlier claims on behalf of the government, recklessly ignored the evidence of this turbo-charging and processed the outlier claims at a higher reimbursement level than was appropriate. *See id.* ¶¶ 92–99.

Under the False Claims Act, federal courts lack subject-matter jurisdiction over suits based on "allegations or transactions" that have been "public[ly] disclos[ed]" unless the relator "is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). Specifically, the FCA provides:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information,
>
> (B) For purposes of this paragraph, "original source" means an individual who had direct and independent knowledge of the information on which the allegations are based and had voluntari-

ly provided the information to the Government before filing an action under this section which is based on the information."

31 U.S.C. § 3730(e)(4).[1] Accordingly, to determine whether subject-matter jurisdiction exists, the Court must (1) determine whether the allegations or transactions on which the qui tam action is based were publicly disclosed in one of the ways listed in the statute, and (2) if so, then determine whether the relator qualifies as an "original source." *United States ex rel. Doe v. John Doe Corp.*, 960 F.2d 318, 322–23 & n. 3 (2d Cir.1992). The relator bears the burden of proof in demonstrating that federal subject-matter jurisdiction exists. *United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F.Supp.2d 443, 449 (S.D.N.Y.2001) (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996)).

In light of *Schindler*, there are two questions before the Court on these motions to dismiss. First, considering the information that the relator, through Steven Landgraber, received in response to Landgraber's FOIA requests, has there been "public disclosure of [the] allegations or transactions" in this action? 31 U.S.C. § 3730(e)(4)(A). Second, if so, does the relator have "direct and independent knowledge of the information on which the allegations are based" such that he is an "original source" not subject to the public disclosure bar? The Court holds that, although there has been public disclosure, plaintiff is an original source of the information with respect to both Huron and Empire. Accordingly, plaintiff's claims

are not precluded by the public disclosure bar.

In its first Memorandum Order, the Court assumed *arguendo* that there had been public disclosure before determining that it was likely plaintiff was an "original source" and giving him leave to amend his complaint to show how he learned of his allegations. *See* 08/25/10 Memorandum Order at 4. Since the Supreme Court has now clarified that information received in response to a FOIA request is a "report" that can lead to public disclosure, there is no longer any serious question that the allegations and transactions that comprise the relator's action were publicly disclosed.

Specifically, the heart of the allegations in the Third Amended Complaint are that Huron, through its control of St. Vincent's, massively inflated St. Vincent's bills to the government for so called "outlier" charges, without any corresponding increase in costs that would justify such an increase. *See* TAC ¶ 79. Since outlier claims, unlike ordinary Medicare/Medicaid claims, are immediately reimbursed by the government, the government relies on financial intermediaries, like Empire, to apply a proxy that discounts the hospital's charges to something closer to what is intended to be actual costs (which the government will not learn before the hospital submits its cost report at the end of the year). *See* 1/24/11 Memorandum at 6–7; TAC ¶¶ 15, 17. The government does this by having its financial intermediary apply a cost-to-charge ratio ("RCC") to any outlier charges submitted, which is calculated using the most recent settled or tentative cost reports showing a hospital's billed

---

1. While this case was pending, Congress enacted the Patient Protection and Affordable Care Act, 124 Stat. 119, which amended the public disclosure bar. Since, however, the Supreme Court has determined that the amendments do not apply to cases, like this one, that were pending at the time the Act

was enacted, this Memorandum Order refers to the statute as it existed when the case was filed. *See Schindler*, 131 S.Ct. at 1889 n. 1 (citing *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, —— U.S. ——, 130 S.Ct. 1396, 1401 n. 1, 176 L.Ed.2d 225 (2010)).

charges and actual costs for a given year. *See* 1/24/11 Memorandum at 6–7; TAC ¶¶ 68–71; Medicare Program; Change in Methodology for Determining Payment in Extraordinarily High–Cost Cases (Cost Outliers) Under the Acute Care Hospital Inpatient and Long–Term Care Hospital Prospective Payment Systems, Final Rule, 68 Fed.Reg. 34,494, 34,500–02 (June 9, 2003) ("Reconciling Outlier Payments Through Settled Cost Reports"), *codified at* 42 C.F.R. § 412.84(i)(2). Because the RCC takes the form of a ratio of costs to charges, hospitals can obtain more Medicare/Medicaid reimbursement than they are entitled to by massively inflating charges, *i.e.*, "turbo-charging," when the costs have not, in fact, increased at a corresponding rate. Memorandum Order 01/24/11 at 7.

The False Claims Act makes it illegal for anyone to knowingly present or cause to be presented to the government a false claim for payment. 31 U.S.C. § 3729(a)(1)(A). Plaintiff alleges that Huron committed fraud by inflating its charges without any corresponding increase in costs. TAC ¶ 79. The responses to the relator's FOIA requests contain both the charge information and the cost information. *See* TAC ¶ 76 (chart prepared by relator citing hospital cost reports for information); Declaration of Counsel for Huron Defendants in Support of Motion to Dismiss dated June 20, 2011 ("Salcido Decl.") Ex. J (relator's FOIA requests); Ex. K (excerpts of documents and data realtor received in response to requests, including cost reports). Therefore, the fraud as alleged against Huron was publicly disclosed. With respect to Empire, the relator alleges that Empire recklessly ignored the signs of fraud and caused the claims to be submitted to the government for payment. *See* TAC ¶ 48; 31 U.S.C. § 3729(b)(1)(A)(iii) ("knowingly" presenting a false or fraudulent claim

means "act[ing] in reckless disregard of the truth or falsity of the information"). Again, the responses to the relator's FOIA requests contain the outlier reimbursements that St. Vincent's received, *i.e.*, the payments from the government made after Empire processed the allegedly fraudulent charges. Salcido Decl. Ex. A, Deposition of Relator, Steven Landgraber, dated Mar. 31, 2011 ("Landgraber Dep.") at 42–46; *id.* Ex. J; *id.* Ex. K; TAG ¶ 76. In the context of the overall disclosure this was sufficient to show that the fraud as alleged against Empire had also been publicly disclosed.

On the issue of public disclosure, the relator argues that the FOIA disclosures did not reveal that the RCC actually used by Empire to process these claims was outdated, causing St. Vincent's to receive gross overpayment, which the relator allegedly learned through his own personal observations. *See* Declaration of Steven J. Landgraber in Support of Relator Plaintiff/Relator's [sic] Opposition to the Motion to Dismiss dated July 11, 2011 ("Landgraber Decl.") ¶ 59; Landgraber Dep. at 60. Although the relator's knowledge of the RCC actually used by Empire is relevant to whether the relator is an "original source" of the allegations, *see infra*, it has no bearing on the issue of public disclosure.

██ Specifically, with respect to plaintiff's false claim allegation against Huron, this is because any overpayment St. Vincent's did or did not receive is irrelevant to establishing fraud under the False Claims Act, since the statute makes it illegal for a person to *submit* a false claim to the government, and does not condition liability on receiving payment. Therefore, the fact that Huron (St. Vincent's) inflated the charges is sufficient, and this was revealed by the FOIA responses.

■ With respect to plaintiff's claim against Empire, plaintiff alleges that St. Vincent's charges in 2005 and 2006 were so out of proportion to its historical charges that Empire recklessly submitted the charges without adjusting the RCC it used to process claims in order to account for the new discrepancy, causing St. Vincent's to receive reimbursement it was not entitled to. The FOIA disclosures show the amount St. Vincent's actually received in outlier reimbursements. If the formula for reimbursement is, as plaintiff asserts, essentially a matter of multiplying the charges billed by the RCC, *see* Landgraber Decl. ¶ 23, then a person can calculate the RCC that Empire used by dividing the payments received by the charges billed. Using the historical data the relator obtained through FOIA requests, a person could also calculate the historical RCCs and see, as plaintiff alleges, that the RCC used in the fraudulent years did not adjust for the inflated charges, allowing someone to allege that Empire was reckless in processing St. Vincent's claims. It is not necessary for someone to know the precise RCC used by Empire in its "pricer model," as plaintiff argues. The transactions underlying the fraud that were disclosed with the FOIA data were sufficient that a person relying solely on the FOIA data could infer that fraud had been committed. *See United States ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*, No. 95 Civ. 1363(BSJ), 2003 WL 21998968, at *10–11 (S.D.N.Y. Aug. 21, 2003) (for public disclosure, information disclosed must be sufficient for observer to infer fraud (citing *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C.Cir.1994))). This also applies to relator's claim against Huron for failure to repay overpayment.

■ In short, the Court concludes that the FOIA responses were tantamount to public disclosure of the frauds here alleged. However, this does not divest the Court of jurisdiction if the plaintiff is an "original source of the information." 31 U.S.C. § 3730(e)(4)(A). Here, Landgraber had "direct and independent knowledge" of the fraud that makes him an "original source" of the information. *See Rockwell Int'l Corp. v. United States ex rel. Stone*, 549 U.S. 457, 463, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007). Indeed, in the Court's Memorandum Order of August 25, 2010, the Court already concluded that Landgraber had shown he was an original source of the information of the allegations against Huron, based on the knowledge he obtained as a former independent contractor working in St. Vincent's reimbursement department. *See* 08/25/10 Memorandum Order at 4. That the responses he later received to his FOIA requests are now considered a "report" for public disclosure purposes does not change that he still obtained direct, first-hand knowledge of the heart of the fraud, making him an original source. *See United States ex rel. Dhawan v. N.Y. Med. Coll.*, 252 F.3d 118, 121 (2d Cir.2001) (holding relator must be source of "core information" upon which complaint is based (quoting *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1159 (2d Cir. 1993))).

Defendant Huron argues that the Second Circuit's decision in *United States ex rel. Dick v. Long Island Lighting Co.* means Landgraber cannot be considered an "original source." 912 F.2d 13 (2d Cir. 1990). In *Long Island Lighting*, the Court of Appeals concluded that a "straightforward reading" of the statutory definition of "original source" required only that an original source (1) have direct and independent knowledge of the information on which the allegations are based, and (2) have voluntarily provided that information to the government before filing

a lawsuit. *Id.* at 16; 31 U.S.C. § 3730(e)(4)(B). As this Court previously held, Landgraber satisfies both of these elements. *See* 1/24/11 Memorandum at 3–4. The Court of Appeals, however, based on a "close textual analysis combined with a review of legislative history," also concluded that there was a *third* requirement for a plaintiff to be considered an original source not subject to the public disclosure bar, "namely, a plaintiff also must have directly or indirectly been a source to the entity that publicly disclosed the allegations on which a suit is based." *Long Island Lighting,* 912 F.2d at 16.

The Second Circuit relied on three premises in requiring this additional element. First, it concluded that the word "information" as used in the phrase "original source of the information" in the public disclosure bar provision of the statute referred to the information that was *publicly disclosed,* 31 U.S.C. § 3730(e)(4)(A), whereas the use of the word "information" in the definition of "original source" in the next provision referred only to the information on which the *plaintiff's allegations* were based, 31 U.S.C. § 3730(e)(4)(B). *Long Island Lighting,* 912 F.2d at 16–17. Second, the Court of Appeals looked to the floor statements of Representative Berman and Senator Grassley to conclude that they intended original source to mean a source to the entity that made the public disclosure. *Id.* at 17–18 (quoting 132 Cong. Rec. H9389 (daily ed. Oct. 7, 1986); 132 Cong. Rec. S20536 (daily ed. Aug. 11, 1986)). Third, looking to the purpose of the statute, the Court determined that the public disclosure bar was intended to encourage people who had knowledge of fraud to bring that "wrongdoing to light" as early as possible, *i.e.* before the allegations are made public. *Id.* at 18 (noting purpose of bar was to halt the "so-called

'conspiracy of silence' that has allowed fraud against the government to flourish" (quoting S. Rep. 99–345, at 14 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5271)).

In *Rockwell,* however, the Supreme Court directly rejected *Long Island Lighting's* reading of the text of the public disclosure bar. *Rockwell Int'l Corp.,* 549 U.S. 457, 127 S.Ct. 1397. Justice Scalia, writing for the Court, concluded that Congress did not intend to "link original-source status to the information underlying the public disclosure." *Id.* at 471, 127 S.Ct. 1397. In so concluding, Justice Scalia held that "information" in section 3730(e)(4)(A) (the public disclosure provision) referred to the information underlying the *lawsuit,* not the information underlying the *public disclosure. Id.* at 472, 127 S.Ct. 1397. "On this interpretation, 'information' in subparagraph (A) and 'information on which the allegations are based' in subparagraph (B) are one and the same, viz., information underlying the allegations of the relator's action." *Id.*

In the wake of *Rockwell,* the continued validity of *Long Island Lighting* has been called into question, although no court in this Circuit has yet declared it abrogated. *See, e.g., United States ex rel. Rosner v. WB/Stellar IP Owner, L.L.C.,* 739 F.Supp.2d 396, 403 n. 62 (S.D.N.Y.2010) (noting *Long Island Lighting's* "continued validity ... is in doubt following" *Rockwell,* but instead finding relator did not have "direct and independent knowledge" making him original source). Given *Rockwell's* clear rejection of the textual premise on which *Long Island Lighting* relies, however, this Court finds there is no other conclusion it can reach besides holding that *Long Island Lighting's* third requirement has been abrogated.[2]

2. In *Schindler,* the Supreme Court noted that

there existed a "three-way" split among the

It may also be noted that if one looks to the purpose of the public disclosure bar, as the Court of Appeals did in *Long Island Lighting,* here, in the instant case, where public disclosure of the allegations resulted from the responses to the relator's own FOIA requests, it would be absurd to hold that the relator's action is "too late" because the FOIA responses disclosed the allegations before the relator filed his complaint. The relator's FOIA requests simply corroborated and elaborated the direct and independent knowledge of the fraud he had obtained through his work at St. Vincent's. *See generally* Landgraber Decl. Considering that Rule 9(b) of the Federal Rules of Civil Procedure requires heightened pleading when a plaintiff brings allegations of fraud, it would be wholly contrary to the purposes of both Rule 9(b) and the Fair Claims Act to require relators with direct (though perhaps not complete) knowledge of the fraud to file their complaints *before* seeking corroboration through FOIA requests. Fed. R.Civ.P. 9(b); *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994) (outlining elements of Fair Claims Act claim that must be alleged with specificity under Rule 9(b)).[3] Thus, even assuming *arguendo* that the third requirement of *Long Island Lighting* remains valid, here the relator is an "indirect source" of the agency's public disclosures, 912 F.2d at 16, as he specifically requested the Medicare cost records for St. Vincent's for the years showing the fraud, causing their disclosure. *See Schindler,* 131 S.Ct. at 1895

(noting in dicta that a relator who requests FOIA information may qualify as "original source").

■ Turning to defendant Empire, Empire argues that because Landgraber did not work at Empire and does not know how it processed St. Vincent's outlier charges, he had no direct and independent knowledge of his allegations that can save him from the public disclosure bar. *See* Memorandum of Law in Support of Empire Healthchoice's Motion to Dismiss for Lack of Subject Matter Jurisdiction dated June 20, 2011 ("Empire Br.") at 17–18. The Court disagrees. The relator's claim against Empire is that Empire received charges from St. Vincent's that were grossly out of proportion to historical charges and costs, and that it was reckless in ignoring the clear signs of fraud and processing the claims for the government for payment. Therefore, what Landgraber needs to show is direct and independent knowledge of what Empire *did* with the charges it received from St. Vincent's. Landgraber stated that he personally learned from inquiries that Empire was using an RCC from 2002 to process St. Vincent's 2005 claims, a ratio that would clearly overcompensate given the gross inflation of St. Vincent's charges, and a ratio that, he alleges, was also contrary to what regulations required of financial intermediaries. Landgraber Decl. ¶ 59; Landgraber Dep. at 60; *see also* TAC ¶¶ 93–116. Although Landgraber may not have known

Courts of Appeals on the issue of whether the original source needs to "cause" the public disclosure, which it declined to address. *See Schindler,* 131 S.Ct. at 1895 n. 8 (citing *United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.,* 579 F.3d 13, 22 (1st Cir.2009)). However, even though the Supreme Court may not have expressly resolved the three-way split among the Courts of Appeals around the country, the Court in *Rockwell* explicitly rejected the specific textual premise on which

*Long Island Lighting* relies, and, to that extent, partly resolved the split.

**3.** Indeed, the Court's Memorandum of January 24, 2011 specifically addressed whether relator's Second Amended Complaint had addressed the Rule 9(b) deficiencies in the First Amended Complaint. 01/24/11 Memorandum at 3–9.

at the time exactly who made what specific decisions at Empire, the Court is satisfied that he has demonstrated direct and independent knowledge of his "core allegation" against Empire—that it recklessly ignored St. Vincent's inflated charges, evidenced by Empire's use of an outdated RCC to process St. Vincent's claims.[4] Therefore, Landgraber is an original source of his allegations against Empire.

Since the Court concludes Landgraber is an original source of the information on which his claims against both Huron and Empire are based, the public disclosure bar does not divest the Court of jurisdiction over the relator's claims. Accordingly, both defendants' motions to dismiss are hereby denied, and the Clerk of the Court is directed to close document numbers 89 and 92 on the docket sheet of this case. Because this case had been stayed pending the Court's decision on these motions, the parties are directed to convene a joint telephone conference with the Court by no later than February 23, 2012, so that the Court can set a new case management plan.

SO ORDERED.

---

4. Defendants also argue that the RCC issue was publicly disclosed when St. Vincent's sent to Empire, which was putatively acting as an agent of the government, a vaguely worded letter indicating that St. Vincent's was "receiving outlier payments based on prior year cost-to-charge ratios. As a result, the cost to charge ratio may not have been adjusted properly and may result in an incorrect outlier payment." Salcido Decl. Ex. O (letter from St. Vincent's to Empire dated October 16, 2006). Moreover, in Landgraber's deposition, Landgraber stated he learned this letter was sent from St. Vincent's to Empire in the course of his employment. Landgraber Dep. at 41. However, even assuming *arguendo* that this letter constitutes a "disclosure" within the meaning of 31 U.S.C. § 3730(e)(4)(A) (listing sources that can lead to disclosure) and even if the RCC issue were thereby publicly disclosed, like the FOIA information, Landgraber still had direct and independent knowledge of the RCC issue through his work at St. Vincent's, making him an "original source." Landgraber Decl. ¶ 59; Landgraber Dep. at 60; *Rockwell,* 549 U.S. at 463, 127 S.Ct. 1397; *see supra* (discussing original source standard).